# Exhibit G

| | |
|---|---|
| **From:** | Watnick, David (Perkins Coie) |
| **To:** | Smathers, Jason |
| **Cc:** | HB-AllianceLUX; Perez, David A. (Perkins Coie); SLankarani@perkinscoie.com; Gyebi, Amaris; Pang, Evelyn (Perkins Coie) |
| **Subject:** | RE: Remaining Privilege Log Issues for Resolution |
| **Date:** | Thursday, February 20, 2025 5:54:43 PM |
| **Attachments:** | 2025.02.20 - Laundrylux - Privilege Log.pdf |

Counsel,

Thank you for your message. It is apparent to us that this is simply a vexatious tactic to harass and distract the parties during summary judgment briefing, by purporting to raise issues already decided by the Court or waived because they were not timely raised during discovery.

The parties have already litigated the privilege issues resulting in the Court's February 2 and February 13 Orders, and Laundrylux has complied with its obligations under those orders. It stands by its privilege positions and will not withdraw its remaining claims of privilege. The "sword-and-shield" doctrine existed long before the Court's February 13 Order (which did not even apply the doctrine), so Alliance had ample opportunity to raise any sword-and-shield argument when the parties briefed these privilege issues to the Court. It never did so.

Mr. Williams' counsel can respond to your request for additional materials related to Mr. Williams' clawed-back documents, but in Laundrylux's view no further production is appropriate or required. Notably, the Court never ordered such production in addressing this issue.

Laundrylux has no obligations to log communications with outside counsel, which occurred only in relation to this lawsuit. You may recall that Alliance sued Laundrylux, so I am not sure what pre-litigation communications you are referring to (although if any existed, Laundrylux would not be obligated to log them). In reviewing our log, we did determine that two documents (produced in eleven iterations) clawed back on September 18, 2024, had been inadvertently omitted from the log (materials identified by Ms. Giftos as potentially privileged). Although our position is that Alliance waived this issue by not seeking relief during discovery, and we reserve all rights, as a courtesy we have updated our log to include these materials. Those two documents are Log Nos. 33 and 34 in the attached.

We trust this resolves the topics raised in your message.

David Watnick
**COUNSEL**

**Perkins Coie**
1120 N.W. Couch Street Tenth Floor
Portland, OR 97209-4128
+1.503.727.2196
dwatnick@perkinscoie.com
perkinscoie.com

**From:** Smathers, Jason <Jason.Smathers@huschblackwell.com>
**Sent:** Thursday, February 20, 2025 7:28 AM
**To:** Perez, David A. (SEA) <DPerez@perkinscoie.com>; Watnick, David (POR) <DWatnick@perkinscoie.com>; Lankarani, Shireen (SEA) <SLankarani@perkinscoie.com>; Gyebi, Amaris <Amaris.Gyebi@wilsonelser.com>; Pang, Evelyn (NYC) <EPang@perkinscoie.com>
**Cc:** HB-AllianceLUX <HBAllianceLUX@huschblackwell.com>
**Subject:** RE: Remaining Privilege Log Issues for Resolution

Counsel,

I am following up on the requests below. Should we not receive a response to our requests by COB today, we will seek intervention from the Court. Given the Court's ruling regarding "sword and shield" issues earlier this week, we think a response regarding our request to withdraw the claw backs mentioned below is imperative.

**Jason Smathers**
**Attorney**
Direct: 414-978-5537
Jason.Smathers@huschblackwell.com

**From:** Smathers, Jason
**Sent:** Monday, February 17, 2025 1:17 PM
**To:** Perez, David A. (Perkins Coie) <DPerez@perkinscoie.com>; Watnick, David (Perkins Coie) <DWatnick@perkinscoie.com>; SLankarani@perkinscoie.com; Gyebi, Amaris <Amaris.Gyebi@wilsonelser.com>; Pang, Evelyn (Perkins Coie) <EPang@perkinscoie.com>

**Cc:** HB-AllianceLUX <HBAllianceLUX@huschblackwell.com>
**Subject:** Remaining Privilege Log Issues for Resolution

Counsel,

I am writing to address these lingering privilege issues.

**The Court's Feb. 13, 2025 Order**

We have received the unredacted and redacted versions of the emails the Court has ordered produced. However, we are also demanding you withdraw your claims of privilege over the
emails mentioned in the order involving Trudy's statement that she spoke to her lawyer and her request for legal advice regarding her severance agreement with Alliance. Trudy Adams has put whether or not she had legal counsel relating to that agreement at issue in the case and Defendants cannot use the privilege there as a both a sword and shield.

In particular we are asking you produce, in full, the following, as described by the Court:
- The email between Adams and Jason Fleck dated June 7, 2023. The Court held that the redacted portion of the email involves a request for legal advice from Defendant Adams. (Order at 5).
- The email between Mr. Fleck and John Sabino regarding review of a document. Based on the timing and categorization of the email on your privilege log, we believe that would be related to the June 7, 2023 request from Ms. Adams. (Order at 5-6)
- The unredacted portion of the May 30, 2023 email from Ms. Adams to Mr. Fleck, wherein she states that she spoke to her lawyer. Given the timing and additional context of the email thread, it appears this attorney-client communication relates to her severance agreement with Alliance. (Order at 8-9)

During the course of this litigation, Ms. Adams has provided sworn deposition testimony that she "didn't consult with an attorney" regarding the Alliance severance agreement but that she did not recall whether she asked for legal advice before signing the document. (Adams Dep. Transcript, p. 183-184). Mr. Fleck testified in his deposition that he also could not remember whether any attorneys looked at the matter or whether Ms. Adams sent her severance agreement to anyone else. (Fleck Rough p. 84-85.) Ms. Adams has also submitted a sworn declaration to the Court, stating that she "could not hire an attorney to review the documents" and that she "did not speak with an attorney regarding any provisions of" the severance agreement and that she was, in effect, coerced into signing it without legal counsel. (ECF No. 25-2, ¶22. 26).

Ms. Adams' testimony and declaration in support of her memorandum in opposition to Plaintiffs' Motion to Dismiss the counterclaims, puts her attempt—or lack thereof—to seek out legal advice at issue. Part of her argument that the severance agreement was unenforceable was because she "was not represented by counsel" and "was subject to unequal bargaining power." Whether she sought out advice of counsel or not—and whether she received advice or chose to sign the document without counsel's input—clearly goes to determining whether the severance agreement bars her counterclaims. It is this specific scenario—where attorney advice is put at issue in a case—where the "sword and shield" approach compels the production of privileged emails. *See QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 286 F.R.D. 661, 664 (S.D. Fla. 2012) (citing cases wherein attorney-client privilege or attorney work-product privilege was waived after it was put at issue in litigation). The Court's Order has made clear these emails were Ms. Adams: 1) seeking legal advice from Laundrylux counsel on June 7, 2023, and 2) referencing her discussions with "her lawyer" on May 30, 2023. Given the unredacted portions that come afterward, one can assume the information given by her lawyer related to the Alliance severance agreement at issue.

Moreover, while Laundrylux has asserted privilege over these communications (not Ms. Adams), it is not Laundrylux's privilege to assert or waive—it is Ms. Adams. Ms. Adams sought advice based on her own severance agreement with Alliance. The fact that she sought it from Laundrylux's counsel does not change the fact that she would be the putative client in this situation. *See In re Tippy Togs of Miami, Inc.*, 237 B.R. 236, 238-9 (Bankr. S.D. Fla. 1999) (noting that the client, not the attorney, holds the privilege and that only the client may waive the privilege, while holding that corporation did not hold privilege when owner of corporation sought personal legal advice). As such, by offering sworn testimony that she did not seek legal representation, she has waived the privilege—to the extent it existed in the first place.

As such, we ask that you immediately withdraw your claim of privilege over these emails. Should you refuse, we will move to compel production of these documents on the basis of waiver and on the basis that there are no other documents in this case from which this information can be obtained.

**Supporting Material for Clay Williams' privilege**

On the February 2, 2025, the Court ruled that the seven emails Clay Williams sent from his personal email to his Laundrylux email forwarding Alliance documents are privileged. This was after counsel for Defendants represented that "Defendants can provide 1:1 cross-reference emails to the Court showing each of the emails identified in the clawback letter were thereafter forwarded to prior counsel…This

position was conveyed to Plaintiff but did not resolve the issue." As a starting point, that evidence was never previously offered to Alliance. However, since you have represented that they exist and that you offered them to counsel for Alliance, please provide the "1:1 cross-reference emails" by close of business Tuesday, February 18, 2025.

**Remaining Privilege Log Entries**

As of the close of discovery, we still do not have a privilege log from you beyond what was produced in conjunction with the clawed-back emails. In our Feb. 5, 2025 meet and confer on a separate privilege issue, you stated that you don't have any additional privileged documents, with Atty. Perez stating that Laundrylux has no in-house counsel and that "no one puts outside counsel" communications on their privilege log.

We first take issue with Mr. Perez's statement, as communication with outside counsel should be added to the privilege log, particularly regarding documents preceding this lawsuit and/or with counsel other than those appearing in this lawsuit. Furthermore, we have serious concerns that information is still being withheld as privileged without being disclosed. In discovery responses you made prior to—and after—the claw back requests, you stated you were withholding documents on the basis of attorney-client privilege in response to a request to "produce all correspondence to or from a Laundrylux email address in your possession, custody or control that includes, either as an attachment or as part of a message, Alliance customer or prospective customer information." (*See* Williams' Response to Plaintiff's Third Set of Requests for Production, Response to Request No. 75, Adams' Response to Plaintiff's Second Set of Requests for Production (Dated Jan. 31, 2025) , Response to Request No. 80, Laundrylux's Response to Plaintiff's Second Set of Requests for Production, Response to Request No. 37, Williams' Response to Plaintiff's Second Set of Requests for Production, Response to Request No. 41,  Adams' Response to Plaintiff's Second Set of Requests for Production, Response to Request No. 75 (Dated June 24, 2024)).

Since then, the only privilege log you have produced has been for emails purportedly inadvertently produced during the course of discovery. Furthermore, Defendants' privilege log has omitted several documents and/or emails clawed back on September 18, 2024—which was noted in prior correspondence to you on December 13, 2024.

As such, we are making one final demand that you produce your ***complete privilege log*** or provide verification that you are not withholding any further documents on the basis of a privilege objection.

**Jason Smathers**
Attorney

**HUSCH BLACKWELL**
511 North Broadway
Suite 1100
Milwaukee, WI 53202

Direct: 414-978-5537
Fax: 414-233-5000
Jason.Smathers@huschblackwell.com
huschblackwell.com
 vBio|vCard

**General Assignment**
**Commercial Litigation**

**Husch Blackwell is a different kind of law firm—structured around our clients' industries and built on a culture of selfless service.**
**Our 1000+ lawyers collaborate across the U.S. from more than 20 offices and our virtual office, The Link, to provide uncommon solutions to our clients' most complex challenges.**

NOTICE: This communication from Perkins Coie LLP may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.