# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

ALLIANCE LAUNDRY SYSTEMS, LLC,

              Plaintiff,

v.

TRUDY ADAMS,
JOHN "CLAY" WILLIAMS and
AUTARKIC HOLDINGS, INC. D/B/A
LAUNDRYLUX

              Defendants.

Case No.: 23-22130

---

**EXPERT DECLARATION OF MARK LANTERMAN**

1.      My name is Mark Lanterman. I am the Chief Technology Officer of Computer Forensic Services ("CFS") located in Minneapolis, Minnesota.[1] CFS and I have been retained as an expert witness in the above-captioned action by Husch Blackwell, LLP on behalf of its client Alliance Laundry Systems ("Alliance"). More specifically, CFS was asked to analyze laptop computers that were assigned to Defendants Trudy Adams and John (Clay) Williams by Alliance and were intended for their respective job responsibilities.

2.      In summary, and consistent with the opinions set forth in greater detail in this declaration, there is evidence that Defendants Adams and Williams exfiltrated

---

[1] **Exhibit A** contains my curriculum vitae, including a list of cases in which I have testified in the last four years, as well as a list of articles I have written throughout the past 10 years. CFS is compensated at rates ranging from $425 to $625 per hour for my work, depending upon the requested task. CFS's compensation is not dependent upon the outcome of this case.

Alliance data in two ways. First, both Defendants Adams and Williams emailed Alliance documents to non-Alliance email addresses (*e.g.*, personal email accounts). Second, there is evidence to indicate that portable, external USB drives were attached to the laptop. On Defendant Williams' laptop, Alliance documents and files were copied to an external USB drive.

## I.    Expert background & qualifications

3.      Our firm specializes in the analysis of digital evidence in civil and criminal litigation. I have over 35 years of experience in computer forensics and cybersecurity. Prior to joining CFS, I was a sworn investigator for the United States Secret Service Electronic Crimes Task Force and acted as its senior computer forensic analyst.

4.      I am certified by the United States Department of Homeland Security as a "Seized Computer Evidence Recovery Specialist," as well as certified in computer forensics by the National White-Collar Crime Center. Both federal and state courts have appointed me as a neutral computer forensic analyst or special master.

5.      I graduated from Upsala College with both a Bachelor of Science and a Master's degree in computer science. I completed my post graduate work in cybersecurity at Harvard University.

6.      I have previously served as adjunct faculty of computer science for the University of Minnesota Technological Leadership Institute's Master of Science and Security Technologies program (MSST). I am a faculty member at the University of St. Thomas School of Law in Minnesota, and for the National Judicial College in Reno, Nevada. I have instructed members of the federal judiciary through the Federal Judicial

Center in Washington, D.C.

7.     I am a member of Working Groups 1 and 11 for the Sedona Conference, which is an institute dedicated to the advanced study of law. I serve on the Sedona Conference's Steering Committee on Artificial Intelligence and the Law.

8.     I am currently appointed to the Arizona Supreme Court's Steering Committee on Artificial Intelligence and the Courts.

9.     I have previously provided training or delivered keynote addresses for the United States Supreme Court; the Eleventh Circuit Federal Judicial Conference; the Eighth Circuit Federal Judicial Conference; the Southern District of Georgia; the Western District of Tennessee; and several state judicial conferences. I delivered the keynote address at the Chief Justices' Conference in Newport, Rhode Island and at Georgetown Law School's advanced e-discovery conference.

10.     I was appointed by the Minnesota Supreme Court to serve the maximum 6-year term as a member of Minnesota's Lawyers Professional Responsibility Board ("LPRB").

11.     I am a co-author of the Minnesota State Bar's e-Discovery Deskbook, and I also write monthly articles for *Minnesota Bench & Bar* magazine.

12.     CFS holds a corporate private detective license issued by the State of Minnesota Board of Private Detective and Protective Agent Services (License No. 2341).

13.     CFS was awarded a Multiple Award Schedule contract (contract #47QTCA22D004L) for the 54151HACS (highly adaptive cybersecurity services) SIN by the General Services Administration (GSA). GSA awarded CFS the contract after a

rigorous inspection and technical competence evaluation of knowledge, abilities, competency, policies, and procedures.

14.    CFS is the exclusive, contracted computer forensic service provider for the Hennepin County Sheriff's Office (the county that encompasses Minneapolis); as well as the Metropolitan Airports Commission, also known as the Minneapolis/Saint Paul International Airport. I am a primary point-of-contact for servicing these contracts on behalf of CFS.

## II.    Materials considered

15.    I am generally familiar with the factual circumstances of this action, having reviewed the complaint. (*See* Dkt. 1).

16.    On March 21, 2024, Alliance submitted two (2) laptop computers to my office for preservation and analysis. I understand that these laptops were assigned to Defendants Adams and Williams by Alliance, for use in connection with Defendants' job responsibilities before they separated from Alliance.

17.    Table 1 below summarizes the identifying information associated with these laptops, including when the laptops were put into service/set up for use by Defendants Adams and Williams.

| Description | Make/Model | User Profile | Serial Number |
|---|---|---|---|
| Trudy Adams' Alliance-issued laptop | Lenovo ThinkPad E15 Gen 2 laptop | T.Adams (in-service: April 15, 2022) | PF-38F6RE |
| Clay Williams Alliance-issued laptop | Lenovo ThinkPad E15 Gen 2 laptop | Clay (in-service: July 21, 2022) | PF-3JTQV7 |

*Table 1*

18.    The laptops' data was encrypted using Microsoft Bitlocker. Bitlocker is a popular encryption software that is built-in to the Microsoft Windows operating system and is designed to protect the integrity of the data. I coordinated with Alliance's IT team to obtain the information necessary to decrypt the laptops and access their data for the purpose of preserving and analyzing them.

19.    After obtaining the information necessary to decrypt the content of the laptops, I created a forensic copy of the laptops' hard drives, preserving their data and operating system. The preservation process was necessary to conduct a complete examination and permitted me to assemble a timeline of user activities conducted on the laptops.

20.    In addition to the laptop computers described above, I have also received and reviewed certain Alliance, security-related policy documents. Those documents are:

    a.    Alliance Employee Handbook (*See* ALSD00000200*)*;

    b.    Alliance IT Acceptable Use Policy, (*See* ALSD00000237);

    c.    Alliance Code of Business Conduct, (*See* ALSD00000931*)*.

21.    Additionally, I have considered certain documents that were produced by the Defendants in this action during discovery, that are identified by Bates label designations:

    a.    DEF00307-316 (representing a July 14, 2023 email from Adams to Williams);

    b.    DEF00465-470 (representing an email forwarded by Williams to Adams).

### III.    Opinion Summary

22.    As noted above, Defendants Adams and Williams both sent emails to personal email accounts, with Alliance file attachments, and attached USB drives to their Alliance-issued laptops shortly before their separation from Alliance. (*See supra.* ¶ 2).

23.    With respect to Defendant Adams, there is evidence that, several emails that contained file attachments were sent between January 5, 2023 and May 19, 2023 from Adams' Alliance email account to a non-Alliance email account (trudy [at] blueeggconsult [dot] com). Moreover, on May 18, 2023 (the day prior to Defendant Adams' separation from Alliance), a USB drive was attached to her Alliance-issued laptop. External USB drives may be used to copy files.

24.    With respect to Defendant Williams, thousands of files from his Alliance-issued laptop were copied to a removable USB data storage device, two days before his separation from Alliance. Additionally, Defendant Williams emailed Alliance files and documents to his personal email address (jclaywilliams1 [at] gmail [dot] com).

### IV.    Defendant Adams emailed Alliance documents to a non-Alliance email account.

25.    I understand that Defendant Adams separated from Alliance on or about May 19, 2023.[2] (*See* Compl. ¶ 13). I have determined, based on emails that are stored on Defendant Adams' Alliance-issued laptop, that Defendant Adams sent Alliance information to a non-Alliance email address ("trudy [at] blueeggconsult [dot] com"). (*See also* Compl. ¶ 21).

---

[2] On January 13, 2023, Adams received an email from LaundryLux with a file called "Trudy Adams ASM Job Offer.pdf." The date on the face of the document is January 5, 2023.

26.     Microsoft Outlook is installed on Adams' Alliance-issued laptop. Outlook is an application (program) that is used to, among other things, send, receive, and retrieve emails and other related information (like calendars and contacts). When Outlook is installed on a computer and connected to an email account, Outlook will save emails in specific container files. These container files are called "OSTs" and "PSTs."[3] I have identified an OST file associated with data from Adams' Alliance email accounts.

27.     Based on the content of these email container files, between January 5, 2023 and May 19, 2023, Adams sent or received at least 37 emails from her Alliance-issued email account to trudy [at] blueeggconsult [dot] com. The majority of these emails had one or more file attachments.

28.     I note that of these emails, 18 emails were deleted from Adams' Alliance email account.

29.     I have previously provided a copy of these emails to Alliance's counsel. These emails are incorporated by reference. Moreover, I have attached as Exhibit B to this declaration, a listing of the emails, including the names of specific file attachments.

30.     As an example, and as may be observed in Exhibit B, there is a deleted email dated March 27, 2023 with the subject line "All" that was sent from Adams' Alliance email account to the "@blueeggconsult" email address. The email contained a

---

[3] OST is an acronym for "offline storage table" and is used by Outlook as a container for emails, and other related data. Such files' primary purpose is to allow offline access and synchronization of email data. Similarly, PST is an acronym for "personal storage table." Like OST files, PST files are designed to store data from email accounts connected to Outlook.

file attachment called "All Contacts-2023-03-27-20-10-23.xlsx." This document is a spreadsheet listing contact and account information for 1,234 contacts and was saved to Adams' Alliance-issued laptop on March 27, 2023 prior to having been sent. This file is consistent with having been exported from Alliance's client record management system.[4]

31.     As another example, on May 18, 2023 (the day prior to Adams' separation from Alliance), another deleted email with the subject line "FW: CORRECTED  Quote, Drawings, Bulkhead Quote, Trough - 9410 University Drawing" was sent from Adams' Alliance email account to the "@blueeggconsult.com" account. This email contains four (4) file attachments, which appear to constitute drawings, project information and cost quotes (dated February 10, 2023) for a specific project/customer of Alliance.[5]

32.     I have not been provided access to the content of the email account to which the emails listed in Exhibit B were sent ("trudy [at] blueeggconsult [dot] com"). I respectfully request access to this account to determine the full scope of Alliance files that were transmitted to or from that account.

**V.    Defendant Adams attached a USB drive to her Alliance laptop on May 18, 2023.**

33.     After preserving the device's data, I analyzed the laptop for activity consistent with the access or copying of files to sources extrinsic to the laptop (*e.g.*, USB data storage devices).

---

[4] Similarly, on April 20, 2023, a substantially similar file called "All Contacts-2023-04-20-11-43-38.xlsx," containing 1,271 contacts was email from Adams' Alliance email account to the "@blueeggconsult" account.
[5] I note that I reasonably believe that this is a contact or customer of Alliance because the quote is written on Alliance letterhead.

34.    When USB drives are attached to a computer, the Windows operating system records: 1) the last time when a device was attached or plugged in, and, if available, 2) the make/model of the device attached, and 3) its serial number. Windows records this information so that if/when the device is subsequently attached, the device is more quickly recognized. Moreover, it is important to understand the Windows operating system, generally, does not keep a record or log of all files stored on an external USB data storage device when the device is simply connected to a computer.

35.    Here, I have determined that the day prior to her separation from Alliance, on May 18, 2023 at approximately 5:48 PM (Central), Adams attached a SanDisk Cruzer USB drive to her Alliance-issued laptop. Based on the information available from Adams' Alliance-issued laptop, there is not sufficient information to determine whether and what files were copied to it at that time. For this reason, I respectfully request access to this USB drive for the purposes of determining whether files were copied to it on May 18, 2023 from Alliance.

**VI.    Defendant Williams sent Alliance files to a personal email account.**

36.    I understand that Defendant Williams separated from Alliance on July 13, 2023—approximately two months after Defendant Adams.

*37.*    Like Defendant Adams, Defendant Williams' Alliance-issued laptop also contains email data, indicating that Williams sent emails from his Alliance email account, and containing attachments, to a personal email address.

38.    Table 2 below is intended to summarize information about these sent emails. I note that all of the emails listed in Table 2 were deleted.



39.    A complete listing of these emails, including the names of attached files, is incorporated at Exhibit C to this declaration.



---

6 I note that this email was later forwarded by Williams to Adams' LaundryLux email address. (*See* DEF000465).

**VII.    Defendant Williams copied files from his Alliance laptop to a USB drive.**

41.     On July 10, 2023 at approximately 10:32 AM (Central), Williams accessed his Google email account online (jclaywilliams1 [at] gmail [dot] com). After accessing this email account, Williams reviewed the content of an email bearing the subject line "FW: Trudy List." Because the email was accessed online, the body of the email, the identity of who/what address sent the email, any attachments, and the dates that it was sent are not available from Williams' Alliance-issued laptop.

42.     At 12:30:35 PM (Central) on July 10, 2023, about two hours after the "FW: Trudy List" email was accessed, a USB drive was attached to Williams' Alliance-issued laptop.

43.     As noted above, Windows records information sufficient to identify when USB drives are attached to a computer. (*See supra.* ¶ 34). Microsoft Windows may also be configured to track the "accessed" time of files. This time records when an application or service last interacts with a file or folder. When a USB device is attached and files are copied to it, Windows may update the last accessed time of the files that are copied. This feature was enabled on Williams' Alliance laptop.

44.     Within seconds after the USB drive was connected, beginning at approximately 12:30 PM and ending at 12:53 PM, a total of 3,713 files that are stored on Williams' Alliance laptop, were accessed. The files were accessed in rapid succession, which is, when considering the attached external USB drive, indicative that those files and their contents were copied from Williams' Alliance laptop to the USB drive.

45.    I have attached as Exhibit D to this declaration, a listing of the files that were copied to external, portable media. As can be observed in Exhibit D, the majority of files originated from the following folder on Williams' Alliance laptop: "\Users\Clay\Clec\Clec Distribution Shared Data - Documents\Clay Williams\."

46.    Because the USB drive that was attached to Williams' Alliance-issued laptop on July 10, 2023 has not been provided to me for analysis, it is not possible to precisely establish the scope, nature, and volume of the copied data.

47.    I respectfully reserve the right to supplement or amend this declaration should additional information be made available, or if additional details are requested.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

Executed on: June 21, 2024 in Hennepin County, Minnesota.

_____

Mark Lanterman

**EXHIBIT A**



# Mark Lanterman
## Chief Technology Officer

Office
800 Hennepin Avenue
5th Floor
Minneapolis, MN 55403

Phone
(952) 924-9220

Fax
(952)924-9921

Email
mlanterman@compforensics.com

Web
www.compforensics.com

## Professional Biography

Mark has over 30 years of experience in digital forensics, e-discovery, and has provided education and training to a variety of audiences. Prior to founding Computer Forensic Services in 1998, Mark was a sworn investigator with the United States Secret Service Electronic Crimes Task Force. Both federal and state court judges have appointed Mark as a neutral computer forensic analyst.

Mark was appointed by the Minnesota Supreme Court for two consecutive three-year terms as a member of the Minnesota Lawyers Professional Responsibility Board, during which he also actively contributed to its Rules & Opinion Committee.

Mark frequently provides training within the legal community, including presentations for the United States Supreme Court, Georgetown Law School, the 11th Circuit Federal Judicial Conference, the 8th Circuit Federal Judicial Conference, the American Bar Association, the Federal Bar Association, the Sedona Conference, and the Department of Homeland Security, among others.

Mark has provided training for federal judiciary members via the Federal Judicial Center in Washington, D.C. Additionally, he serves as faculty at the National Judicial College. Mark is a professor in cybersecurity at the Saint Thomas School of Law. Mark is a member of the Sedona Conference Working Groups 1 and 11, where he is recognized as a "dialogue leader" on the judicial branch's adoption of Artificial Intelligence. Further, Mark was appointed by the Arizona Supreme Court to its judicial steering committee for the implementation of Artificial Intelligence.

## Education and Certifications

Upsala College – B.S. Computer Science; M.S. Computer Science

Harvard University – Cybersecurity

Department of Homeland Security – Federal Law Enforcement Training Center Seized Computer Evidence Recovery Specialist

National White-Collar Crime Center – Advanced Computer Forensics

## Publications

Co-author of the *E-Discovery and Forensic Desk Book*

Regular columnist for *Bench & Bar* magazine



### Previous Testimony List – Mark Lanterman

- *State v. Eric Smith,* 50-CR-23-2421, (Mower Co., Minn.)
- *Ranning v. SBS Transportation, Inc. et al.,* 62-CV-23-400, (Ramsey Co., Minn)
- *North American Science Associates, LLC v. Conforti, et al.,* 24-CV-00287 (D. Minn.)
- *Plus One, LLC v. Capital Relocation Services LLC,* 23-CV-2016, (D. Minn.)
- *Raymond James & Associates, Inc. et al. v. Piper Sandler et al.,* 2:23-CV-02644 (W.D. Tenn.)
- *Griffin v. Johnson & Johnson et al.,* 21-CV-00134, (D. Vermont)
- *Piper Sandler Companies v. Gonzalez,* 23-CV-2281 (D. Minn.)
- *State v. James Nyonteh*, 27-CR-22-5940 (Henn. Co., Minn)
- *State v. Zhaaboshkang Bush,* 04-CR-22-2661 (Beltrami Co., Minn)
- *Lauren Ellison v. JM Trucking, et al.,* 2023CI16452 *(*Bexar Co., Texas)
- *State v. Gary Otero, 52-CR-23-57 (*Nicollet Co., Minn.)
- *Mayo Foundation for Medical Education & Research v. Knowledge to Practice, Inc.,* 21-CV-1039 (D. Minn.)
- *Wilbur-Ellis Company LLC v. J.R. Simplot et al. (D. South Dakota)*
- *Universal Power Marketing, et al. v. Sara Rose,* 82-CV.20-2812 (Henn. Co., Minn.)
- *TCIC, Inc. v. True North Controls, LLC, et al.,* 27-CV-22-3774 (Henn. Co. Minn.)
- *MHL Custom, Inc. v. Waydoo USA, Inc, et al.,* 21-CV-0091 (D. Delaware)
- *Tumey LLP, et al. v. Mycroft, Inc., et al.,* 4:21-CV-00113 (W.D. Mo.)
- *A'layah Le'vaye Horton v. Greenway Equipment Co., Inc. et al.,* 20MI-CV00562 (Miss. Co., Missouri)
- In the Marriage of: Beals and Beals, 12-FA-21-235 (Chippewa Co., Minn.)
- *Warren, et al. v. ACOVA, Inc., et al.,* 27-CV-18-3944, (Henn. Co., Minn.)
- *Hagen v. Your Home Improvement, LLC, et al.*, 73-cv-21-2067, (Sterns Co. Minn.)
- *State of Minnesota v. Raku Sushi & Lounge Inc.,* 27-CR-21-8730, (Henn. Co., Minn.)
- *Jane Doe, et al. v. Independent School District 31,* 20-CV-00226, (D. Minn.)

- Galan v. Munoz, et al., 2019-CI-19143, (Bexar Co., Texas)
- *Vision Industries Group, Inc. v. ACU Plasmold, Inc., et al.,* 2:18-CV-6296, (D. N.J)
- *Troutman v. Great American Hospitality, LLC,* 19-CV-878, (Stanley Co., N. Carolina)
- *Baxter Insurance Group of Agents, et al. v. Woitalla et al., 27-CV-20-16685,* (Henn. Co. Minn.)
- *Sweigart v. Patten, et al.,* 5:21-cv-00922, (U.S. Dist Ct. E.D. Penn.)
- *Sarah Hoops v. Solution Design Group, Inc.,* 27-CV-20-11207, (Henn. Co. Minn.)
- *Stephanie Ramos v. Lazy J Transport, et al.,* 2018CI21594, (Dist Ct. Bexar Co., Texas)
- *Schwan's Company, et al. v. Rongxuan Cai, et al.,* 0:20-SC-2157, (U.S. Dist. Ct. Minn.)
- *Michael D. Tewksbury, as Guardian ad Litem for Miles Chacha and Lulu Kerubo Simba v. PODS Enterprises, LLC, et al.,* 62-CV-20-4209, (Ramsey Co., Minn.)
- *RG Golf v. The Golf Warehouse, 19-CV-00585* (U.S. Dist. Ct. Minn.)
- *Dunn v. PSD LLC, et al.,* 02-CV-20-4504, (Anoka Co., Minn.)
- *Chambers, et al. v. B&T Express, et al.,* 19-CI-00790, (Franklin Cir. Ct. Ky. 2d Div.)
- *Natco Pharma Ltd. V. John Doe,* 21-cv-00396-ECT-BRT, (U.S. Dist. Ct. Minn.)
- *Kimberly Clark, et al. v. Extrusion Group, et al.,* 1:18-cv-04754-SDG, (U.S. Dist. Ct. N.D. Ga.)
- *PalatiumCare Inc. v. Notify, LLC, et al.,* 2021-cv-000120, (Sheboygan Co., Wis.)
- *State of Nebraska v. Jeffrey Nelson,* CR21-19, (Saunders Co., Nebraska)
- *Lutzke v. Met Council,* 27-CV-19-14453, (Henn. Co. Minn.)
- *Rivera et al., v. Hydroline, et al.,* DC-19-143, (Dist. Ct. Duval Co, Texas).
- *Coleman & Hartman, et al. v. iAMg, et al.,* 16CV317, (Cir. Ct. Polk Co Wis.)
- *Mixon v. UPS, et al., 2019-CI-13752,* (Dist Ct. Bexar Co., Texas)
- *Goodman v. Goodman,* 27-DA-FA-21-672, (Henn. Co. Minn.)
- *Shaka v. Solar Partnership,* 27-CV-20-12474, (Henn. Co. Minn.)
- *Patel Engineering Ltd. V. The Republic of Mozambique,* UNCITRAL PCA: 2020-21.
- *Estate of Rima Abbas v. ABDCO,* (19-CI-1315), (Fayerette Cir. Ct. Ky. 4th Div.)

- *State of Nebraska v. Jeffrey Nelson,* CR21-19, (Saunders Co., Nebraska)
- *Riccy Mabel Enriquez-Perdomo v. Richard A. Newman, et al.,* 3:18-CV-549, (U.S. W.D. Kentucky)
- *United States v. Alakom-Zed Crayne Pobre,* PX-19-348, (U.S. Dist. Maryland)
- *Lewis v. Northfield Savings Bank, et al.,* 295-5-19-WNCV, (Vermont, Sup. Ct., Washington Div.)
- *State of Minnesota v. Thomas James Crowson,* 13-CR-20-325, (Chisago Co., Minn.)
- *Vimala et al., v. Wells Fargo, et al.,* 3:19-CV-0513, (U.S. M.D. Tenn.)
- In re: Estate of Anthony Mesiti, 318-2017-ET-00340, N.H. 6th Cir. Probate Division.
- Ernie's Empire, LLC, et al. v. Burrito & Burger, Inc., et al., 82-CV-20-28, (Wash. Co., Minn.)
- *Sol Brandys v. Wildamere Capital Management LLC,* Case No.: 27-CV-18-10822, (Henn. Co., Minn.)
- *State of Minnesota v. Yildirim*, 27-CR-19-7125, (Henn. Co., Minn.)
- *Jabil v. Essentium, et al.,* 8:19-cv-1567-T-23SPF, (M.D. Fla.)
- Lifetouch National School Studios Inc. v. Walsworth Publishing Company, et al., (U.S. Dist. Conn.)
- *Motion Tech Automation, LLC v. Frank Pinex*, Case No.: 82-CV-18-5202, (Wash. Co., Minn.)
- *Lundin v. Castillo, et al.*, Case No.: 2019-CV-000452, (Walworth Co., Wis.)
- *Yun v. Szarejko-Gnoinska, et al.,* 27-PA-FA-13-967, (Henn. Co., Minn.)
- *Jonas Hans v. Belen Fleming*, Case No.: 27-PA-FA-13-967, (Henn. Co., Minn.)
- *Daniel Hall, et al. v. Harry Sargeant III*, 18-cv-80748, (S.D. Fl.)
- *Miller v. Holbert, et al.,* Case No.: 48-CV-15-2178, (Mille Lacs Co., Minn.)
- *Strohn, et al. v. Northern States Power Company, et al*., 18-cv-1826, (U.S. Dist. Ct. Minn.)
- Stamper, et al. v. Highlands Regional Medical Center, Case Nos.: 11-CI-1134 & 12-CI-00468, (Commonwealth of Kentucky, Floyd Cir. Co., Div. I).
- *Patterson Dental Supply, Inc. v. Daniele Pace*, Case No.: 19-cv-01940-JNE-LIB, (U.S. Dist. Ct. Minn.)
- *Ryan Rock v. Jonathan Sargent and The Sargent Group, Inc. d/b/a Todd & Sargent, Inc.,* LACV050708, (Story Co., Iowa)
- Oscar Alpizar v. Eazy Trans, LLC, et al., 2018CI00878, (Bexar Co., Texas)
- *MatrixCare v. Netsmart*, Case No.: 19-cv-1684, (D. Minn.)

- *State of Minnesota v. Nathan Roth*, Case No.: 80-CR-18-1007, (Wadena Co., Minn.)
- *Parisi v. Wright*, Case No.: 27-CV-18-5381, (Henn. Co., Minn.).
- *Lloyd C. Peeoples, III v. Carolina Container, LLC*, 4:19-cv-00021 (N.D. Georgia)
- *Sandra Wolford, et al. v. Bayer Corp.*, et al., 16-CI-907, 17-CI-2299, Pike Cir. Ct. Div. I, Kentucky)
- *BuildingReports.com, Inc. v. Honeywell International, Inc.,* Case No.: 1:17-cv-03140-SCJ, (N.D. Ga.)
- *Evan D. Robert and Dr. Kerry B. Ace v. Lake Street Cafeteria, LLC, et al.,* Case No: 27-CV-17-18040, (Henn. Co., Minn.)
- *State of Minnesota v. Andrew Seeley,* 14-CR-17-4658, (Clay Co., Minn)
- *State of Minnesota v. Stephen Allwine*, 82-CR-17-242, (Wash. Co., Minn.)



Publications List – Mark Lanterman

*Bench & Bar of Minnesota*

*Ransomware and federal sanctions*, January/February 2024

*Biden issues ambitious executive order on AI,* December 2023

*The CSRB weighs the lessons of Lapsus$*, November 2023

*Deepfakes, AI, and digital evidence*, October 2023

*Protecting our judges,* September 2023

*CISO Beware: Cyber accountability is changing,* August 2023

*ChatGPT: The human element,* July 2023

*This article is human-written: ChatGPT and navigating AI,* May/June 2023

*The shifting emphasis of U.S. cybersecurity,* April 2023

*Gloves off: The upcoming national cybersecurity strategy,* March 2023

*Thinking about the future of cyber insurance,* January/February 2023

*Ransomware and counteracting the interconnected risks of the IoT*, December 2022

*Executive Order 22-20 and Minnesota's growing cybercrime rates*, November 2022

*Social engineering or computer fraud? In cyber insurance, the difference matters,* October 2022

*The Cyber Safety Review Board's first report and the impact of Log4j,* September 2022

*What critical infrastructure efforts can teach us about cyber resilience,* August 2022

*How the American Choice and Innovation Online Act may affect cybersecurity,* July 2022

*Smishing attacks and the human element,* May/June 2022

*Still on the defensive, More on the Missouri website vulnerability investigation,* April 2022

*What we can already learn from the Cyber Safety Review Board,* March 2022

*The Log4j vulnerability is rocking the cybersecurity world. Here's why.,* January/February 2022

*On the defensive: Responding to security suggestions,* December 2021

*Go fish? Proportionality revisited,* November 2021

*Mailbag: Cybersecurity Q+A,* October 2021

*The NSA advisory on brute force attacks,* September 2021

*Security is a team game,* August 2021

*Improving national cybersecurity,* July 2021

*Apple's new iOS strikes a blow for data privacy*, May/June 2021

*Geofence warrants, The battle is just beginning*, April 2021

*Ransomware and federal sanctions*, March 2021

*The SolarWinds breach and third-party vendor security*, February 2021

*Considerations in cloud security,* January 2021

*Deciding when to use technology-assisted review*, December 2020

*How to avoid an old scam with a new twist*, November 2020

*Your back-to-school tech brush-up*, October 2020

*The Twitter breach and the dangers of social engineering*, September 2020

*Cyber risk: Is your data retention policy helping or hurting?,* August 2020

*Cyber riots and hacktivism,* July 2020

*Working from home and protecting client data,* May/June 2020

*Cybersecurity in pandemic times,* April 2020

*Business continuity and coronavirus planning,* March 2020

*Doxxing made easy: social media,* March 2020

*Taking responsibility for your cybersecurity,* February 2020

*Beyond compliance: Effective security training,* January 2020

*Doxxing redux: The trouble with opting out,* December 2019

*Proportionality and digital evidence,* November 2019

*AI and its impact on law firm cybersecurity,* October 2019

*Too secure? Encryption and law enforcement,* September 2019

*Security, convenience and medical devices,* August 2019

*Physical security should be part of your incident response plan,* July 2019

*"Papers and effects" in a digital age, pt II,* May/June 2019

*Security considerations for law firm data governance,* April 2019

*Third-party vendors and risk management,* March 2019

*The Marriott breach: four years*?, February 2019

*"Papers and effects" in a digital age,* co-authored with Judge (Ret.) Rosenbaum, January 2019 (Republished in The Computer & Internet Lawyer)

*The Chinese spy chip scandal and supply chain security,* December 2018 (Republished in The Computer & Internet Lawyer)

*Don't forget the inside threat,* November 2018

*Cyberattacks and the costs of reputational harm,* October 2018

*Fair elections and cybersecurity,* September 2018

*E-discovery vs. forensics: Analyzing digital evidence,* August 2018

*Social media and managing reputational risk,* July 2018

*Managing Cyber Risk: Is cyber liability insurance important for law firms?,* May/June 2018 (Republished in The Computer & Internet Lawyer)

*Social engineering: How cybercriminals capitalize on urgency,* April 2018

*Stephen Allwine: When crime tries to cover its digital tracks,* March 2018

*Is the Internet of Things spying on you?,* February 2018

*#UberFail,* January 2018

*Ransomware: To pay or not to pay?,* December 2017

*How digital evidence supported gerrymandering claims,* November 2017

*Facial recognition technology brings security & privacy concerns,* October 2017

*Putting communication and clients first in digital forensic analysis,* September 2017

*Digital evidence: New authentication standards coming,* August 2017

*Your Personal Data – Or is it? Doxxing and online information resellers pose threats to the legal community,* May/June 2017

*What You Don't Know Can Hurt You: Computer Security for Lawyers,* March 2014

### Minnesota Lawyer

*Phishing, vishing and smishing – oh, my!,*  January 2018

*Equifax was unprepared for a data breach,* September 2017

*Cybersecurity and forensic application in cars,* July 2017

*Preventing 'spear-phishing' cyber attacks,* May 2017

*Opting out when private information goes public,* March 2017

*Are fingerprints keys or combinations?,* February 2017

*Digital Forensics and its role in data protection,* February 2017

*Acknowledge the security issues,* December 2016

*Modern life is driven by the internet of things,* November 2016

*Are medical devices vulnerable to hackers?,* October 2016

*Digital evidence as today's DNA,* September 2016

### Colorado Lawyer

*Is Emailing Confidential Information a Safe Practice for Attorneys?,* July 2018
(Republished in The Journals & Law Reviews database on WESTLAW)

**International Risk Management Institute, Inc. (IRMI)**

*Considerations on AI and Insurance,* December 2023

*Data Retention Policies as Proactive Breach Mitigation*, October 2023

*Cyber-Risk Management in the Age of ChatGPT*, June 2023

*Cyber-Security Considerations for Employee Departures*, April 2023

*Cyber Safety Review Board on Lapsus$*, December 2022

*Apple Vulnerabilities and Staying Apprised of Current Cyber Threats*, September 2022

*Evolving Threats? Assess and Update Security Measures,* June 2022

*Cyber Security and the Russian Invasion of Ukraine,* April 2022

*Thoughts on the FBI Email Compromise—and Lessons Learned,* January 2022

*Ransomware, National Cyber Security, and the Private Sector*, October 2021

*Standardization Matters in Establishing a Strong Security Posture*, June 2021

*Third-Party Vendor Risk Management*, March 2021

*The Importance of (Remote) Security Culture in Mitigating Risks*, December 2020

*Security from Home: Continuing to Work and Learn Amid COVID-19,* September 2020

*Operational Risk Revisited in the Wake of COVID-19,* June 2020

*Cyber Threats and Accounting for Operational Risk,* March 2020

*Human Aspect of Incident Response Investigations,* January 2020

*The Impact of Digital Incompetency on Cyber-Security Initiatives,* September 2019

*Communication in Responding to Cyber Attacks and Data Breaches,* June 2019

*Cyber Security and Resilience*, January 2019

*Leadership in Developing Cultures of Security,* September 2018

*Real-Life Consequences in a Digital World: The Role of Social Media,* July 2018

*Some Thoughts on the Dark Web—and How it Affects You,* March 2018

*Personal Information and Social Media: What Not to Post,* September 2017

*Managing Doxxing-Related Cyber Threats,* July 2017

*Understand the Layers of Cyber-Security and What Data Needs Protecting,* March 2017

*Learn about the Internet of Things: Connectivity, Data, and Privacy,* January 2017

*Assessing Risk and Cyber-Security,* September 2016

**SCCE The Compliance & Ethics Blog**

*The Components of Strong Cybersecurity Plans: Parts 1-5,* 2017

*Prevention Is the Best Medicine,* August 2016

*Lawyerist*

*Detection: The Middle Layer of Cybersecurity,* April 2017

*Don't Be Too Hasty! What to Do When an Email Prompts You to Act Quickly,* February 2017

*How to Avoid Spoofing, Spear Phishing, and Social Engineering Attacks,* October 2016

*Law Practice*

*The Dark Web, Cybersecurity and the Legal Community,* July/August 2020

**Captive International**

*COVID-19 and the importance of the cyber captive,* April 2020

**Attorney at Law Magazine**

*The Digital Challenges of COVID-19,* June 2020

**E-Discovery Deskbook**

Chapter Thirteen "Forensic Experts—When and How to Leverage the Talent" co-authored with John M. Degan Briggs and Morgan, P.A.

**The Complete Compliance and Ethics Manual 2022**

*Cybervigilance in Establishing Security Cultures*

# Exhibits B-D
## Withheld and Filed Under Seal