UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALLIANCE LAUNDRY SYSTEMS LLC,

       Plaintiff,

   v.

TRUDY ADAMS, JOHN "CLAY" WILLIAMS
and AUTARKIC HOLDINGS, INC. D/B/A
LAUNDRYLUX,

       Defendants.

Case No. 23-cv-22130 (MCR)

_____

TRUDY ADAMS, JOHN "CLAY" WILLIAMS,

       Defendants/Counterclaim Plaintiffs,

   v.

ALLIANCE LAUNDRY SYSTEMS LLC,

       Plaintiff/Counterclaim Defendant/
       Third Party Defendant,

   and

MIKE HAND, SAMANTHA BAKER and
GREG REESE,

       Third-Party Defendants.

_____

**LAUNDRYLUX'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Autarkic

Holdings, Inc. d/b/a Laundrylux ("Laundrylux") moves for summary judgment on

the claims brought by Alliance Laundry Systems LLC ("Alliance"). Laundrylux's

motion is based on the memorandum of law attached hereto.


Dated:  March 14, 2025                    */s/ David. A. Perez*
                                          David A. Perez (admitted pro hac vice)
                                          Evelyn Pang (admitted pro hac vice)
                                          David Watnick (admitted pro hac vice)
                                          Shireen Lankarani (admitted pro hac vice)
                                          DPerez@perkinscoie.com
                                          **PERKINS COIE LLP**
                                          1155 Avenue of the Americas, 22nd Fl.
                                          New York, NY 10036
                                          Tel:  (212) 262-6900
                                          Fax:  (212) 977-1649

                                          */s/ Beth-Ann E. Krimsky*
                                          Beth-Ann E. Krimsky
                                          Florida Bar No. 968412
                                          **GREENSPOON MARDER LLP**
                                          200 East Broward Blvd., Suite 1800
                                          Fort Lauderdale, Florida 33301
                                          Tel: (954) 527-2427
                                          Fax: (954) 333-4027

                                          *Attorneys for Defendant Autarkic*
                                          *Holdings, Inc. d/b/a Laundrylux*

## CERTIFICATE OF SERVICE

I hereby certify that Laundrylux's motion for summary judgment and accompanying documents were served on all counsel of record via email on March 14, 2025, sent via overnight mail to the Court on March 13, 2025, and scheduled for hand delivery to the Court on March 14, 2025.

Dated:  March 14, 2025

/s/ David A. Perez
David A. Perez (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036
Tel:  (212) 262-6900
Fax:  (212) 977-1649

*Attorneys for Defendant Autarkic
Holdings, Inc. d/b/a Laundrylux*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALLIANCE LAUNDRY SYSTEMS LLC,

       Plaintiff,

  v.

TRUDY ADAMS, JOHN "CLAY" WILLIAMS
and AUTARKIC HOLDINGS, INC. D/B/A
LAUNDRYLUX,

       Defendants.

Case No. 23-cv-22130 (MCR)

_____

TRUDY ADAMS, JOHN "CLAY" WILLIAMS,

       Defendants/Counterclaim Plaintiffs,

  v.

ALLIANCE LAUNDRY SYSTEMS LLC,

       Plaintiff/Counterclaim Defendant/
       Third Party Defendant,

  and

MIKE HAND, SAMANTHA BAKER and
GREG REESE,

       Third-Party Defendants.

_____

**MEMORANDUM OF LAW IN SUPPORT OF
LAUNDRYLUX'S MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................1

STATEMENT OF FACTS ......................................................................3

      A.    Alliance ......................................................................3

      B.    Laundrylux ................................................................4

      C.    Trudy Adams.............................................................5

      D.    John "Clay" Williams ...............................................5

      E.    Adams and Williams routinely emailed documents to themselves for work. ......................................................6

      F.    Laundrylux was free to hire Adams and Williams; was not aware of their email practices; and did not condone the taking of information from former employers. ....................6

PROCEDURAL HISTORY.......................................................................7

LEGAL STANDARD.................................................................................8

ARGUMENT ............................................................................................9

    I.    Alliance cannot prove damages.................................................9

    II.    Alliance has failed to prove trade-secret misappropriation. ...............14

      A.    Alliance has failed to prove a "trade secret.".............................15

      B.    Alliance has failed to prove misappropriation..........................29

      C.    Damages should at least be limited...........................................32

    III.    Alliance has failed to prove tortious interference. ...............34

      A.    Alliance has failed to prove the requisite business relationship................................................................34

      B.    Alliance has failed to prove Laundrylux's knowledge.............37

      C.    Alliance has failed to prove actionable interference.................38

      D.    Damages should at least be limited...........................................40

CONCLUSION .......................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

<small>**CASES**</small>

*Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*,
  432 F. Supp. 2d 1319 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501
  (11th Cir. 2008).........................................................................14, 32, 33

*Am. Red Cross v. Palm Beach Blood Bank, Inc.*,
  143 F.3d 1407 (11th Cir. 1998) ...................................................29, 31

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................9

*Balesia Techs., Inc. v. Cuellar*,
  2023 WL 3491214 (S.D. Fla. May 17, 2023)....................................36

*Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*,
  993 F.3d 1299 (11th Cir. 2021) .........................................................12

*City of Rome v. Hotels.com, L.P.*,
  549 F. App'x 896 (11th Cir. 2013) ....................................................12

*Compulife Software Inc. v. Newman*,
  959 F.3d 1288 (11th Cir. 2020) .........................................................14

*Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*,
  797 F.3d 1248 (11th Cir. 2015) .........................................................38

*Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*,
  2024 WL 2332167 (M.D. Fla. Mar. 13, 2024)...................................38

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
  647 So.2d 812 (Fla. 1994) ...........................................14, 34, 35, 36

*Hennegan Co. v. Arriola*,
  855 F. Supp. 2d 1354 (S.D. Fla. 2012)..............................................24

*In re Maxxim Med. Grp., Inc.*,
  434 B.R. 660 (Bankr. M.D. Fla. 2010)...............................................18

## TABLE OF AUTHORITIES
### (cont.)

**Page(s)**

*In re Seven Stars on Hudson Corp.*,
    637 B.R. 180 (Bankr. S.D. Fla. 2022), *aff'd sub nom. Seven Stars*
    *on the Hudson Corp. v. MDG Powerline Holdings, LLC*, 2022 WL
    10046439 (S.D. Fla. Oct. 17, 2022), *aff'd sub nom. In re Seven*
    *Stars on the Hudson Corp.*, 2023 WL 4760713 (11th Cir. July 26,
    2023) ................................................................................................9, 10, 12, 32

*Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.*,
    627 F. App'x 907 (11th Cir. 2015)....................................................12

*M.C. Dean, Inc. v. City of Miami Beach*,
    199 F. Supp. 3d 1349 (S.D. Fla. 2016).........................................15, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...........................................................................9

*Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth.*,
    2008 WL 1925088 (M.D. Fla. Apr. 29, 2008), *aff'd*, 301 F. App'x
    881 (11th Cir. 2008)..........................................................................37

*NoNaNi Ent., LLC v. Live Nation Worldwide*,
    Inc., 2022 WL 17539685, at *3 (M.D. Fla. Dec. 8, 2022) ................38

*Pals Grp., Inc. v. Quiskeya Trading Corp.*,
    2017 WL 532299 (S.D. Fla. Feb. 9, 2017) .......................................27

*Perdue Farms Inc. v. Hook*,
    777 So. 2d 1047 (Fla. Dist. Ct. App. 2001).......................................33

*Porter v. Ray*,
    461 F.3d 1315 (11th Cir. 2006) ..........................................................9

*Premier Lab Supply, Inc. v. Chemplex Indus., Inc.*,
    94 So. 3d 640 (Fla. Dist. Ct. App. 2012).......................................11, 32

*Progressive Select Ins. Co. v. Rafferty*,
    472 F. Supp. 3d 1141 (M.D. Fla. 2020).............................................9

*REM Co. Inc., v. Alliance Laundry Sys. LLC*,
    24-cl-00312 (Woodford County)....................................................28, 36

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

*Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic
Supplies Corp.,*
719 F.2d 1092 (11th Cir. 1983) ............................................34, 37

*Ruckelshaus v. Monsanto Co.,*
467 U.S. 986 (1984)......................................................18

*Shenzhen Kinwong Elec. Co. v. Kukreja,*
574 F. Supp. 3d 1191 (S.D. Fla. 2021).............................38

*Sw. Stainless, LP v. Sappington,*
582 F.3d 1176 (10th Cir. 2009) ......................................24

*Templeton v. Creative Loafing Tampa, Inc.,*
552 So. 2d 288 (Fla. Dist. Ct. App. 1989)...................27, 31

*Thomas v. Alloy Fasteners, Inc.,*
664 So. 2d 59 (Fla. Dist. Ct. App. 1995).........................40

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC,*
898 F.3d 1279 (11th Cir. 2018) ......................15, 18, 28, 29

*Yuyo's Towing, Inc. v. Best Towing, Inc.,*
2024 WL 5111693 (M.D. Fla. Dec. 13, 2024) .................36

**STATUTES**

18 U.S.C. § 1836(b)(3).........................................14, 33

Defend Trade Secrets Act, 18 U.S.C. § 1836 .........................14

Fla. Stat. Ann. § 688.004 ...........................14, 32, 33

Fla. Stat. § 688.002 ...........................15, 29, 33

Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.001-009.............14, 15, 32, 39

**RULES**

Fed. R. Civ. P. 26 ...........................1, 10, 11, 12

Fed. R. Civ. P. 37 ...........................11

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

Fed. R. Civ. P. 56(a)..................................................................................8

**OTHER AUTHORITIES**

ALLIANCE LAUNDRY SYSTEMS, https://alliancelaundry.com/# (last
 visited Feb. 24, 2025) ...........................................................................22

ALLIANCE LAUNDRY SYSTEMS, https://bit.ly/3D4zvWU (last visited
 February 22, 2025)..................................................................................3

LAUNDRYLUX, https://bit.ly/4k8mqwl (last visited February 22, 2025)...................4

Restatement (Second) of Torts § 768 (1979)............................................38

## INTRODUCTION

This case involves free-market competition between two companies in the commercial laundry industry. The bigger company, Alliance, dominates the market and has developed a reputation for a toxic work culture. The smaller company, Laundrylux, is a family-owned business that has gained ground by focusing on superior products and employee wellness.

In 2023, two Alliance employees—Trudy Adams and John Clay Williams— left the company to work for Laundrylux. Alliance then sued Laundrylux for (1) trade-secret misappropriation, and (2) tortious interference. Laundrylux is entitled to summary judgment on those meritless claims for multiple reasons.

**No damages evidence.** The easiest way to resolve this case is to dismiss Alliance's claims for failure to prove damages. Alliance did not submit the "computation of damages" required by Rule 26; did not provide a damages calculation in response to interrogatories; did not provide evidence of damages via its 30(b)(6) representative (or any other witness); and did not provide an expert report on damages. Without proof on this essential element of Alliance's claims, Laundrylux is entitled to summary judgment. *Id.*

**No trade-secret misappropriation.** Even apart from damages, Laundrylux is entitled to summary judgment on the trade-secret misappropriation claims because Alliance cannot prove that Adams or Williams took anything that meets the legal

definition of a trade secret: information that (i) derives independent economic value from not being known or readily ascertainable, and (ii) is protected by reasonable security measures. The information at issue is either widely known or easily ascertainable. Moreover, Alliance took virtually no efforts to protect the supposed secrecy of its information. It was widely shared throughout the industry without confidentiality markings or non-disclosure agreements. And there is no evidence Alliance told its employees—through company policies or otherwise—that the information was "secret." By failing to protect its information, Alliance has forfeited any claim to secrecy it might have had.

Alliance also cannot show that Laundrylux knew or should have known that the purported secrets were improperly obtained. There is no evidence anyone at Laundrylux knew Adams and Williams had emailed Alliance documents to themselves while employed at Alliance. And though Alliance alleges that Adams used Alliance customer lists at Laundrylux, there is no evidence Laundrylux had reason to know the lists supposedly came from Alliance when Adams credibly claimed she compiled them herself.

If the Court allows the trade-secret claims to proceed, which it should not, damages should at least be limited to the profits Laundrylux purportedly made from sales involving alleged trade secrets. Only four such sales are even arguably at issue, meaning that the *maximum amount* Alliance could recover would be the profits from

those four sales that Alliance could link, with evidence, to the alleged misappropriation.

**No tortious interference.** Alliance's tortious-interference claim also fails. *First*, Alliance has not shown interference with any relationship in which it had existing or prospective legal rights. *Second*, Alliance has not shown that Laundrylux knew about Alliance's purported (and demonstrably nonexistent) rights in those relationships. *Third*, Alliance has not shown that Laundrylux intentionally and unjustifiably interfered with the claimed relationships; to the contrary, Laundrylux simply competed for customers, which even Alliance acknowledges Laundrylux had every right to do. At the very least, damages should be limited to the profits Alliance allegedly lost from the four at-issue sales.

## STATEMENT OF FACTS

### A.    Alliance

Alliance manufactures and sells commercial laundry equipment. Amended Complaint ("AC") ¶ 9. As the largest player in the industry, Alliance employs more than 4,000 people. *See* ALLIANCE LAUNDRY SYSTEMS, https://bit.ly/3D4zvWU (last visited February 22, 2025). It operates in about 170 countries through a network of 650 distributors and nine direct offices. *Id.*

Former employees and customers have described a toxic culture at Alliance that includes intimidation and bullying, sexist behavior, and the wrongful

withholding and/or manipulation of compensation. The motions for summary judgment filed by Adams and Williams discuss this testimony in detail. *See* AW Mot.

### B.    Laundrylux

Laundrylux is a family-owned business that employs about 150 people. *See* LAUNDRYLUX, https://bit.ly/4k8mqwl (last visited February 22, 2025); Ex.12 64:16-20.[1] Unlike Alliance, Laundrylux does not manufacture equipment. *Id.* at 38. Laundrylux's business strategy is to distribute advanced products, manufactured mostly in Europe, that are more expensive but better-performing than those of its competitors. Ex.12 88:20-89:10.

Laundrylux works to attract "great talent" by offering competitive salaries and maintaining a supportive workplace. Ex.12 175:23-176:14. In recent years, about ten people have left Alliance for Laundrylux. Ex.12 177:2-12. Those employees have testified that they switched to Laundrylux for better pay, improved training, and more open communication with leadership. Ex.7 229:5-23; Ex.8 46:1-4; Ex.9 46:1-13. They further testified that Laundrylux never asked them to bring confidential information from Alliance. Ex.8 47:13-25; Ex.9 50:1-52:7; Ex.11 136:16-25.

---

[1] All record evidence is attached to the concurrently-filed declaration of David A. Perez.

### C.    Trudy Adams

Adams began working at Alliance as a regional sales manager in 2019. Adams Decl. ¶2. Her base salary was only $14,400 per year; any additional compensation had to be earned through commissions. Ex.55 24:14-18. As detailed in her motion for summary judgment, Adams alleges that Alliance managers mistreated her and wrongfully withheld earned commissions. AW Mot. at 18-23.

In January 2023, Adams received and rejected a job offer from Laundrylux. Ex.7 147:16-149:18. In April, Laundrylux sent Adams another offer with a start date of June 1, which she accepted. *Id.*[2] After Alliance terminated Adams on May 19, Adams's start date at Laundrylux was moved up to May 22. *See* Ex.13; Ex.55 112:20-113:19. Laundrylux's witnesses have testified that no one at the company discussed potential business deals with Adams before she started at Laundrylux, and there is no evidence to the contrary. Ex.11 130:2-13.

### D.    John "Clay" Williams

Williams began working at Alliance as a regional sales manager in 2018. Williams Decl. ¶2. His base salary, like Adams's, was only $14,400 per year. *Id.* ¶3. As detailed in his motion for summary judgment, Williams alleges that Alliance managers often delayed or withheld commission payments he had earned. AW Mot.

---

[2] Laundrylux's 30(b)(6) witness testified that delayed start dates are standard in the industry because of the time needed to complete pending sales cycles. Ex.7 148-149.

at 18-23.

Williams accepted a job offer from Laundrylux on June 27, 2023; resigned from Alliance on July 13; and started at Laundrylux on July 17. Ex.14.

### E.    Adams and Williams routinely emailed documents to themselves for work.

Throughout their employment at Alliance, Adams and Williams routinely emailed certain documents to their personal emails to facilitate work and for printing, as Alliance did not provide them with a printer.[3] Many of the emails say "print" in the subject line. *See, e.g.*, Ex.17.

Unbeknownst to Laundrylux, Adams and Williams continued this practice after they began talking with Laundrylux, and Williams downloaded some documents to a USB drive. Ex.54 123:14-21. Also unbeknownst to Laundrylux, Adams and Williams later forwarded a small number of documents to their Laundrylux email accounts. Ex.7 170:21-171:4, 175:9-14, 177:13-178:6. Those documents will be discussed in detail below.

### F.    Laundrylux was free to hire Adams and Williams; was not aware of their email practices; and did not condone the taking of information from former employers.

Laundrylux was free to hire Adams and Williams on the open market. Neither signed any non-compete agreement with Alliance. Ex.52 (RFA Responses 45-48).

---

[3] Documents show this practice dates back to 2018-2019. *E.g.*, Exs.15-17.

Alliance's CEO, Michael Schoeb, has acknowledged that ███████████

████████████████████████████████████████████████████████████

███. Ex.6 22:20-21:1.

Laundrylux's 30(b)(6) representative testified that Laundrylux did not know Adams and Williams used their personal email accounts for work; that Laundrylux did not ask them to send any information to Laundrylux; that Laundrylux would not want employees to bring information from former employers; and that Laundrylux instructs new hires to stop using methods they learned elsewhere and trains them to become more effective salespeople by following Laundrylux's own practices. Ex.7 167-68, 285:3-18. Other Laundrylux representatives gave similar testimony. *E.g.*, Ex.10 65:12-24.

## PROCEDURAL HISTORY

In August 2023, Alliance filed this suit against Laundrylux, Adams, and Williams. Dkt.1. The original complaint asserted claims for trade-secret misappropriation, tortious interference, conversion, civil theft, breach of the duty of loyalty, and breach of contract. *Id.* Defendants answered the complaint, and Adams and Williams asserted counterclaims. Dkt.14.

In October 2024, defendants moved for judgment on the pleadings on all claims except the breach-of-contract claims. Dkt.63. The Court granted the motion, citing "material defects" in the complaint, and allowed Alliance only "one

-7-

opportunity to amend." Dkt.89 at 6.

Alliance's amended complaint, filed in December 2024, asserts six causes of action:

(1) trade-secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (against all defendants);

(2) trade-secret misappropriation under Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.001-009 (against all defendants);

(3) breach of the duty of loyalty (against Adams and Williams);

(4) tortious interference (against all defendants);

(5) breach of contract (against Adams); and

(6) breach of contract (against Adams and Williams).

Dkt.98 at 13-25.

Defendants' motion to dismiss, also filed in December 2024, is still pending before the Court. Dkt.101-1. Laundrylux incorporates here all the arguments raised therein.

## LEGAL STANDARD

A court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On issues for which the nonmovant would bear the burden of proof, the movant has two options: (1) it may simply point out a lack of evidence to support the nonmoving party's case; or (2) it may provide affirmative evidence demonstrating that the nonmoving party will be unable to prove

its case at trial." *Progressive Select Ins. Co. v. Rafferty*, 472 F. Supp. 3d 1141, 1144-45 (M.D. Fla. 2020) (cleaned up). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). A mere "scintilla of evidence in support of the [non-movant's] position" is not sufficient, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); neither is "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (cleaned up).

## ARGUMENT

### I.    Alliance cannot prove damages.

The easiest way to resolve this dispute would be to grant summary judgment for inability to prove damages. In a recent case with similar facts, a court in this Circuit granted summary judgment for precisely that reason. *In re Seven Stars on Hudson Corp.*, 637 B.R. 180, 187 (Bankr. S.D. Fla. 2022), *aff'd sub nom. Seven Stars on the Hudson Corp. v. MDG Powerline Holdings, LLC*, 2022 WL 10046439 (S.D. Fla. Oct. 17, 2022), *aff'd sub nom. In re Seven Stars on the Hudson Corp.*, 2023 WL 4760713 (11th Cir. July 26, 2023). Here, as there, "the record is devoid of any evidence upon which [Alliance] can satisfy its burden to prove the essential

element of damages. Not in [Alliance's] Rule 26(a)(1) initial disclosures. Not in [Alliance's] answers to the defendants' interrogatories. Not in [Alliance's] Rule 30(b)(6) deposition testimony. And … not in any timely submitted expert report." *Id.* (cleaned up). This failure of proof dooms Alliance's claims. *Id.*

**No disclosure under Rule 26(a).** Alliance never provided the "computation of damages" required by the Federal Rules of Civil Procedure. Rule 26 requires a party to include in its initial disclosures "a computation of each category of damages claimed" and to supplement those disclosures promptly if they are incomplete or incorrect. Fed. R. Civ. P. 26(a)(1)(A)(iii), (e)(1)(A).

Alliance's most recent supplemental disclosures, dated January 1, 2025, say only that "the calculation of damages is currently unknown":

> **3.    COMPUTATION OF EACH CATEGORY OF DAMAGES CLAIMED.  FED.R.CIV.P. 26(A)(1)(A)(III).**
>
> Alliance seeks to recover all damages to which it is entitled in connection with its claims, including its damages, Defendants' improper gains, punitive damages, treble damages and all other recovery available under applicable law.  Alliance's investigation of damages is continuing, and the calculation of damages is currently unknown.  Alliance will provide a computation of damages after it has an opportunity to complete discovery and proceed with this lawsuit.

Ex.46. While Alliance promised to "provide a computation of damages after it [had] an opportunity to complete discovery," *id.*, it never did.

Alliance's failure to comply with Rule 26 precludes it from producing damages evidence at trial. Rule 37 provides that if a party fails to provide information required by Rule 26, it is not allowed to use that information "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Rule 37 exclusion is required here. There is no possible justification for Alliance's failure to submit a basic computation of damages in the 18 months since filing suit. Laundrylux fully complied with its discovery obligations and—as the Court recently emphasized, Dkt.150—the time for arguing otherwise has long since passed. Moreover, Alliance bears the burden of proving how it has been damaged and by how much. It could have done that in any number of ways, including by relying on its own data and market analysis to show lost profits. *E.g.*, *Premier Lab Supply, Inc. v. Chemplex Indus., Inc.*, 94 So. 3d 640, 645 (Fla. Dist. Ct. App. 2012). It did not do so.

Far from being "harmless," Alliance's failure to follow the rules is severely prejudicial. Because Alliance has not even *hinted* at its claimed damages in disclosures or elsewhere, Laundrylux has had no opportunity to analyze Alliance's purported damages, seek relevant discovery, or retain a damages expert. Allowing Alliance to present undisclosed damages evidence to a jury would be trial by ambush.

-11-

Courts routinely exclude undisclosed damages evidence under similar circumstances. *See, e.g., Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1308 (11th Cir. 2021) (affirming exclusion of lost-profit damages where failure to disclose "hampered [defendant's] damages expert from preparing his analysis before trial"); *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 905 (11th Cir. 2013) (affirming exclusion of damages evidence and "reject[ing] [plaintiffs'] attempt to shirk their responsibility under Rule 26(a)"); *Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.*, 627 F. App'x 907, 908 (11th Cir. 2015) (affirming exclusion of "expert testimony and repairs estimate" for Rule 26 noncompliance). And because Alliance failed to disclose *any* damages evidence whatsoever, it has nothing to present at trial, which means its failure "is a sufficient basis—based on the text of Rule 37(c)(1)—to grant summary judgment in favor of [Laundrylux]." *In re Seven Stars*, 637 B.R. at 204.

**No other damages evidence.** Beyond Alliance's failure to comply with Rule 26, Laundrylux is also entitled to summary judgment because Alliance has not produced any damages evidence in response to interrogatories, in its 30(b)(6) deposition, or via an expert report.

Interrogatory responses. In January 2024, Laundrylux propounded an interrogatory asking Alliance to "[i]temize in specific detail the mathematical basis for the total amount of damages [Alliance] claims, stating how [Alliance] arrived at

this figure." Ex.47 (Interrogatory 24). Alliance responded by saying only that it "object[ed] to this request as premature as the calculation of damages in this case is ongoing." *Id.* Adams served a similar interrogatory in September 2024, and Alliance again refused to provide a substantive response, still claiming—in the final month of discovery—that it required more discovery to provide any response. Ex.48 (Interrogatory 8). Alliance never provided a calculation.

<u>30(b)(6) testimony</u>. Alliance's 30(b)(6) representative never explained the methods Alliance would use to calculate damages or provided any numbers. Ex.1 104-09.



*Id.* at 114.

Expert testimony. The only expert Alliance has retained in this case is Mark Lanterman, who lied under oath about attending college. Dkt.136. Lanterman did not offer any damages calculation or opinion on Alliance's purported damages. *Id.*

\*    \*    \*

Each of Alliance's claims requires, as an essential element, proof of damages. *See* Fla. Stat. Ann. § 688.004 (FUTSA); *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1335 (S.D. Fla. 2006) (same), *aff'd*, 294 F. App'x 501 (11th Cir. 2008); 18 U.S.C. § 1836(b)(3)(B) (DTSA); *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994) (tortious interference). Without any competent evidence of damages, Laundrylux is entitled to summary judgment on all claims for monetary relief.[4]

## II. Alliance has failed to prove trade-secret misappropriation.

Alliance pleads two claims for trade-secret misappropriation: one under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and one under the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. §§ 688.001-.009. The two claims can be analyzed together, as the DTSA "largely mirrors" the FUTSA. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020). Laundrylux

---

[4] In boilerplate language at the end of its AC, Alliance requests injunctive relief on its trade-secret claims. AC ¶25. But Alliance has never pursued that relief, having failed to request an injunction during the roughly two years it claims Laundrylux has had its trade secrets. Even if injunctive relief were at issue, Alliance would not be entitled to it for the reasons explained below.

will focus on the FUTSA for simplicity, though its arguments apply to both claims.

To prevail on a trade-secret misappropriation claim under the FUTSA, "a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018). Alliance lacks sufficient evidence to sustain its burden on either element.

### A.    Alliance has failed to prove a "trade secret."

Alliance's evidence is insufficient to establish the existence of a trade secret as a matter of law. A "trade secret" is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4). "[T]he plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *M.C. Dean, Inc. v. City of Miami Beach*, 199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016).

Alliance has not shown that *any* of the information Adams and Williams sent to their Laundrylux emails (or copied to a USB) qualifies as a trade secret. After

refusing for months to specify what, exactly, it claimed were trade secrets, Alliance finally listed seven categories of information in an interrogatory response: (1) financial data; (2) demographic reports; (3) price sheets; (4) "[i]mages of Alliance customer equipment and specific voltage requirements"; (5) customer floor plans or "drawings"; (6) customer quotes; and (7) customer lists. Ex.49 (Interrogatory 8). The evidence shows that some of this information (like financial data), is not at issue, and the rest is either publicly available, easily ascertainable, or not subject to reasonable secrecy-protection measures. None of it is a trade secret.

### 1) Financial Data

Alliance has not produced a single document or any testimonial evidence supporting its allegation that financial data was taken. To the contrary, Alliance representatives testified ███████████████████████████████████████ ██████████████████████████████████████. Ex.3 258:3-8; Ex.4 27:2-20; Ex.5 85:23-86:8. Accordingly, financial data is not at issue.

### 2) Demographic Reports

A demographic report is a report on a geographic area that includes information about population, median household income, number of laundromats, etc. *See* Ex.2 64:22-25; Ex.6 41-55. Demographic reports are compiled from publicly available data and can be generated in minutes. Ex.4 117. Anyone can hire a third-party company to generate the same report. Indeed, Laundrylux's counsel

paid Sites USA $495 to generate a report Alliance claims is a trade secret; the report came back the same day.[5]

To start, there is no evidence that Adams or Williams sent any Alliance-generated demographic report to their Laundrylux (as opposed to personal) emails. Accordingly, the Court need not even consider whether such reports constitute trade secrets.

Regardless, demographic reports are clearly not trade secrets. Alliance's CEO acknowledged that . Ex.6 45-47. Alliance representatives testified that:

> ➤  as documents and RFA responses confirm. *See* Ex.4 48:24-45:14; Exs.19, 22 (demographic report shared with customers); Ex.52 (RFA Response 4).

> ➤ ████████████████████ Ex.2 227:5-228.

> ➤ ██████████████████. Ex.4 118.

> ➤ ██████████████████
> Ex.2 229:1-5.

> ➤ ██████████████████
> . Ex.1 65.

---

[5] *Compare* Ex.19 (demographic report created by Sites USA that Alliance claims is a trade secret), *with* Ex.20 (demographic report purchased from Sites USA for the same address).

As the Supreme Court has explained, "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information," his "property right" in the trade secret "extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see also M.C. Dean, Inc.*, 199 F. Supp. 3d at 1353 (same).

Disclosure to customers thus defeats Alliance's trade-secret claim. Moreover, Alliance did not take *any* steps to protect the supposed secrecy of the reports, a failure that independently dooms Alliance's claim. *E.g.*, *Yellowfin*, 898 F.3d at 1300 (affirming dismissal of trade-secret claim where plaintiff "failed to reasonably protect the information"); *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 692 (Bankr. M.D. Fla. 2010) (no trade secret where materials were not marked confidential and not subject to distribution restrictions). Alliance thus has no claim based on the alleged misappropriation of demographic reports, which are generated quickly and easily based on public information.

### 3)    Price Sheets

Price sheets for laundry equipment provide the manufacturer's suggested retail prices (MSRP), not the prices customers pay. Ex.6 71:22-25. As with demographic reports, there is no evidence that Adams or Williams sent Alliance

price lists to their Laundrylux emails, so this category of information is not at issue.[6]

Regardless, testimony from Alliance representatives and documentary evidence show that:

➤ █████████████████████████████████ Ex.1 201:7-202:1; Ex.2 211:7-10; 148:1-5; Ex.6 71-73.

➤ █████████████████████████████████. Ex.2 59:2-6; Ex.3 202; Ex.27 (Alliance price list sent to third-party sub-dealer without NDA). ████████████ Ex.2 231:8-19; Ex.3 244:19-22.

➤ █████████████████████████████████ Ex.2 63-64; Ex.1 44:8-45:10, 171:17-172:1.

➤ Alliance representatives—including CEO Mike Schoeb—█████████████████████████. *See* Ex.6 70:9-71:25; Ex.2 63-64, 66:3-20, 147:21-25, 231; Ex.4 131:6-8; Ex.28 ████████████████████████████████ Ex.6 78:7-13.

➤ ████████████████████████████████. Ex.29.

---

[6] Before Adams's arrival, Laundrylux was already in possession of the price list she purportedly emailed to her personal email. Ex.23. This is unsurprising because third-party distributors routinely circulate price sheets; Laundrylux had received Alliance's price sheets for years before Adams ever interviewed with Laundrylux. See, e.g., Exs.24-26.

Laundrylux's witnesses likewise testified that price sheets are widely circulated within the industry, shared via email and social media, and not considered confidential. *See* Ex.12 15:10-22 ("as we send out price lists, we know, within ten minutes, everybody in the industry has it"); *see also* Ex.7 241, 288:7-14; Ex.10 122:1-19, 124:4-10, 131:12-15.

Again, Alliance's disclosure of price sheets to individuals who had no obligation to keep them secret, along with its failure to implement any security measures, defeats its trade-secrets claim. *See infra* at 27-29.

### 4)    Photos of Customer Equipment

Alliance alleges that "[i]mages of Alliance customer equipment and specific voltage requirements" are trade secrets. Ex.49. Two such photos are copied below.



An Alliance Vice President testified



Ex.2 76. An Alliance sales manager likewise testified that:

. Ex.4 121:21-24, 123.

To the extent Alliance takes issue with the photos because they could reveal some technical information about the machines, like voltage requirements, that information is readily available online. Ex.4 122; Ex.2 146-47.[7] Alliance's website

---

[7]

-21-

hyperlinks to the five brands of equipment it offers. *See* ALLIANCE LAUNDRY SYSTEMS, https://alliancelaundry.com/# (last visited Feb. 24, 2025). These hyperlinks immediately lead to photos and detailed technical specifications for each piece of equipment Alliance sells.

Once again, there can be no trade secret in information that is readily accessible, shared with people who have no obligation to keep it secret, and not reasonably protected from disclosure. *See infra* at 27-29.

### 5)    Customer Floor Plans

Alliance sometimes prepares drawings, or floor plans, showing where laundry machines can be placed in a customer's space. Ex.1 57. Again, Alliance representatives testified that ███████████████████████████████

➢    ██████████████████████████████████████ *See* Ex.1 58:3-16; Ex.3 251:4-9, 252:3-14; Ex.4 49:12-14; Ex.2 222. These customers even post their floor plans on Facebook. Ex.31.

➢    █████████████████████████████████████ ████████████. Ex.2 222.

➢    ██████████████████████████████████ Ex.4 115:19-116:6. ████████████████████████████████ Ex.3 251:4-9, 252:3-14; Ex.7 189:12-24.

➢    Floor plans are shared with third-party architects, general contractors, and city planners. Ex.10 28:14-29:20; Ex.1 58-60.

➢    ██████████████████████████████████████ ████████████Ex.4 116:11-14.

&gt; Alliance's 30(b)(6) representative ████████████████████████
████████ Ex.1 59-60.

Customer floor plans are not trade secrets, therefore, because they are widely shared
without any secrecy protections. *See infra* at 27-29.

### 6)    Customer Quotes

Customer quotes are documents reflecting prices that sellers offer customers
for their products. Alliance's 30(b)(6) witness ███████████████████████
████████:



Ex.1 57.

Alliance representatives further testified that:

&gt; ██████████████████████ Ex.2 146:15-16.



➢ ███████████████████████████████████. Ex.3 104:3-11; Ex.4 48:24-49:5; Ex.6 20-21; Ex.2 230; *see also* Ex.32 (quotes sent to third parties without NDA).

➢ ██████████████████████████. Ex.2 181; Ex.4 59:24-60:13, 67-68.███████████████████████████████ Ex.2 176:14-18.

➢ █████████████████████████(Ex.6 64),████████ Exs.33-34.

Laundrylux's 30(b)(6) representative likewise testified that it is standard industry practice for customers to share quotes with competitors and on social media. Ex.7 288:7-14; Ex.35.

Again, customer quotes cannot be trade secrets because they are shared with people who have no obligation to keep them secret and are not otherwise protected by adequate security measures. *See infra* at 27-29, *see also, e.g.*, *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1190 (10th Cir. 2009) (holding price list was not a trade secret despite employee's execution of confidentiality agreement where competitor could acquire the information simply by requesting it from a customer); *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012) (rejecting trade-secret claim where company "provided [salesperson] with the pricing information and permitted him to share that information with potential customers without requiring those customers to refrain from disclosing the pricing information to others").

### 7)    Customer Lists

Alliance alleges that Adams downloaded certain customer or industry contact lists from Alliance's client-relationship management platform (Salesforce) and later sent the lists to her Laundrylux email. AC ¶23. Some Alliance witnesses testified

██████████████████████████████████████████████████████

██████████████████████████████.

Adams, on the other hand, maintains that she compiled the contact lists from her work in the industry, third-party subscription services, and Google searches. Ex.55  48:17-49:17;  202:16-203:21.  Documentary  evidence  supports  Adams's position.  In  2022,  for  example,  Adams  emailed  her  Alliance  supervisors █

████████████████████████████████████ Ex.36, 36-1.  One  of  her  supervisors ████████████████████████

████████████████████████:

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

*Id.* Alliance's 30(b)(6) representative acknowledged ████████████████████

████████████████████████████████████████████████████████

██████████████ Ex.1 257-258.

But even accepting Alliance's allegations for the purpose of summary judgment, Alliance has not shown that the lists qualify as trade secrets for three reasons.

*First*, the lists Adams emailed contain only the most basic contact information—i.e., names, addresses, and emails. Some lists are *only email addresses*. Alliance representatives acknowledged that ████████████████████

████████████████████████████████ Ex.2 79; Ex.5 177:5-10. They further asserted that ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Ex.3 149-152. But the lists Adams emailed did not contain that sort of information.

*Second*, the evidence shows that lists of the sort Adams emailed (i.e., with only basic contact information) can easily be compiled through Google or purchased through third-party services for a few hundred dollars. In 2024, for example, Adams purchased such a list for $150. *See* Ex.37. Industry insiders confirmed that customer

lists can be generated quickly and cheaply.[8] Courts routinely refuse to find protectable trade-secret rights in lists which, as here, simply compile easily ascertainable information. *E.g.*, *Templeton v. Creative Loafing Tampa, Inc.*, 552 So. 2d 288, 289–90 (Fla. Dist. Ct. App. 1989); *Pals Grp., Inc. v. Quiskeya Trading Corp.*, 2017 WL 532299, at *5 (S.D. Fla. Feb. 9, 2017).

*Third*, Alliance's efforts to maintain the purported "secrecy" of its customer lists were not reasonable as a matter of law. ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ There is also no evidence of any other Alliance policy saying that customer lists are confidential; that Salesforce information cannot be downloaded; or that contacts employees make at Alliance belong to the company and cannot be used at their next job. During depositions, Alliance representatives ████████████████████████████ ████████████████, Ex.2 151:7-152:3; ████████████████████████████

---

[8] *See, e.g.*, Ex.7 51:13-52:6 ("You can … pay somebody $350 in Pakistan to spend an entire day on Google and they will get you address, the contact information, the name of the business, and you can target any specific market segment and/or geography."), 167:21-22 (same); Ex.10 87:1-11, 117:3-118:2 ("I usually use some person in Pakistan to do this stuff… it's like 25 bucks, 50 bucks… I bought a list for every state…. This is not uncommon."); Ex.12 16, 120:21-122:5, 220 (same); Ex.21 68:21-69:22 (similar).

██████████████████████████████████, Ex.4 160:5-15; and ██████████████████████

█████████████████████████████, Ex.3 42:3-19, 43:4-18; Ex.5 117:16-20.

Moreover, the evidence shows that Alliance itself does not treat its competitors' customer lists as confidential—at least not on a consistent basis. ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex.1 83:9-84:4. And Alliance itself has been sued on other grounds for allegedly taking customer lists from a third-party distributor. *See REM Co. Inc., v. Alliance Laundry Sys. LLC*, 24-cl-00312 (Woodford County) (asserting contract and tortious interference claims) (Ex.45).

The facts of this case are strikingly similar to those in which courts have rejected trade-secret claims. In *Yellowfin*, for example, an employee of a boat manufacturer "downloaded hundreds of files," including "detailed purchasing history and specifications for all of [the manufacturer's] customers," before leaving to start a competing company. 898 F.3d at 1287. The Eleventh Circuit affirmed summary judgment dismissing the manufacturer's trade-secret claim because it "failed to reasonably protect the information." *Id.* at 1300. While the manufacturer "limit[ed] employee access to the information and password-protect[ed] the computer network on which the information resided," it did not mark the information as confidential; allowed the employee to keep the information on his personal

devices; and did not require the employee to sign a confidentiality agreement. *Id.* The Eleventh Circuit held that the manufacturer had "effectively abandoned all oversight" over the information, observing that mere "verbal statements" that it should be kept confidential were insufficient under the circumstances. *Id.* at 1300-01.

So too here. Alliance did not mark the information confidential, did not prohibit employees from downloading information, and did not make clear to employees that customer lists were supposedly trade secrets. Alliance's own failings defeat its trade-secret claim. *See Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410-11 (11th Cir. 1998).

### B.    Alliance has failed to prove misappropriation.

Even if Alliance could prove the existence of any trade secret, it cannot prove that *Laundrylux* misappropriated that secret. As relevant here, "misappropriation" is "the acquisition of a secret by someone who *knows or has reason to know* that the secret was improperly obtained or who used improper means to obtain it." *Yellowfin*, 898 F.3d at 1297 (cleaned up) (emphasis added); *see also* Fla. Stat. § 688.002(2).

Alliance's evidence is insufficient, as a matter of law, to show that Laundrylux *knew or had reason* to know that the alleged trade secrets were acquired by improper means. There is no evidence that Laundrylux knew Adams and Williams were

emailing or downloading information from Alliance servers while they were employed at Alliance.

Moreover, while Alliance alleges that Laundrylux supervisors knew Adams's contact lists came from Alliance, the documents show otherwise. Alliance alleges that "Adams sent a draft mass email solicitation to other Laundrylux sales team members, including her boss, Jason Fleck, … informing Laundrylux that she planned to send the solicitation to 'her' Alliance contact list." AC ¶33. Yet Adams actually wrote:

> On Jun 1, 2023, at 3:51 PM, Trudy Adams <tadams@laundrylux.com> wrote:
>
> **Please see email below. I plan on sending this out to my list on Monday. Please let me know if you have any comment/suggestions, or if you feel this is okay.**

Ex.39. Adams thus referred to "my list," not Alliance's list. And Adams's email does *not* attach the referenced list. In other exchanges, Adams told Fleck she was creating the lists herself:

> **From:** Trudy Adams
> **Sent:** Monday, July 10, 2023 12:34 PM EDT
> **To:** Jason Fleck <jfleck@laundrylux.com>
> **CC:** Trudy Adams <tadams@laundrylux.com>
> **Subject:** Trudy Florida List
> **Attachment(s):** "Trudy LaundryLux List.xlsx"
>
> Jason,
>
> I am creating these lists and a google map search for my entire territory. Attached is the Florida list, I am still working on Alabama and Mississippi.
> Jeremy showed me how he does it, and I copied him :)
>
> I do know the following according to Google Maps, my territories have the following existing laundromats:
> Florida – 76
> Mississippi – 413
> Alabama  - 192

Ex.40.

Alliance also alleges that "Laundrylux personnel, including its CEO, John Sabino" supported Adams's efforts to solicit Alliance customers "using Alliance's proprietary customer leads." AC ¶36. That allegation appears to reference an email chain where Adams forwarded customer's message expressing dissatisfaction with Alliance to her Laundrylux colleagues:

**Sent:** Friday, June 16, 2023 1:23 PM
**To:** Trudy Adams <tadams@laundrylux.com>
**Subject:** Re: Trudy Adams – LaundryLux

You know I'm interested and not happy with the way alliance has changed the way they do business I would like a quote on a laundry mat build out for the brewton location
Thanks

Ex.41. Nothing in the email chain indicates how Adams obtained that customer's information, but the message shows Adams knew the customer "on a first name basis as a result of [her] experience [in the industry] and that [she] did not need a secret list to enable [her] to ascertain [his] identity." *Templeton*, 552 So. 2d at 290. Trade-secret law does not preclude Adams "from utilizing contacts and expertise gained during [her] former employment," *id.*, so nothing in this email would have alerted Laundrylux to wrongdoing. *See also Am. Red Cross*, 143 F.3d at 1410-11 (same).

The rest of Alliance's "knowledge" allegations appear to allege Laundrylux's knowledge of Adams's and Williams's pursuit of *particular customers*, not knowledge of their alleged wrongful acquisition of trade secrets. AC¶¶41-46. Alliance's evidence is thus insufficient to establish that Laundrylux knew or should

have known that any of the information allegedly brought to the company was obtained improperly.

### C.    Damages should at least be limited.

In the alternative, Alliance's damages should at least be limited to the damages it can prove were caused by the alleged misappropriation of trade secrets in connection with the only four sales arguably at issue.

Under the FUTSA, damages can include (1) "the actual loss caused by misappropriation," (2) "the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss," or (3) "a reasonable royalty" for the "damages caused by" the "unauthorized disclosure or use of a trade secret." Fla. Stat. Ann. § 688.004. Laundrylux presumes that royalties are not at issue (although again, Alliance hasn't said), so Alliance must show either "actual loss" or "unjust enrichment." *Id.* While there are various ways to make those showings (Alliance hasn't even tried), plaintiffs often attempt to prove either their lost profits or the profits the defendant unjustly gained. *E.g.*, *Alphamed*, 432 F. Supp. 2d at 1339-52; *Premier Lab*, 94 So. 3d at 645. Either way, plaintiffs must establish a causal link to defendants' conduct. *See id*. at 1334. And damages must be "proven with a reasonable degree of certainty." *In re Seven Stars*, 637 B.R. at 202 (cleaned up, collecting cases).

Here, the *most* Alliance could conceivably recover would be the profits Laundrylux made from the only four sales even arguably at issue. As explained below with respect to Alliance's tortious-interference claim, Alliance submits that Laundrylux "interfered" with deals involving ten customers. *See infra* at 34-35. Of those ten customers, only four actually purchased from Laundrylux. Alliance's damages should be limited to the profits from those four sales because there is *no other evidence* upon which a damages finding could be based. Alliance must also show that it lost each sale *because of* Laundrylux's misappropriation of trade secrets. *See* Fla. Stat. § 688.004(1); *Alphamed*, 432 F. Supp. 2d at 1334 (plaintiff's "failure to link [d]efendants' conduct to any damage that it may have suffered is fatal" to its trade-secrets claim).

At the very least, Laundrylux is entitled to summary judgment on Alliance's claim for exemplary damages, which are permitted only if the misappropriation was "willful and malicious." Fla. Stat. Ann. § 688.004; *see also* 18 U.S.C. § 1836(b)(3)(C) (same). The evidentiary record comes nowhere close to showing that Laundrylux's conduct "meet[s] the test of egregiousness necessary to support an award of exemplary damages" for trade-secret misappropriation. *Perdue Farms Inc. v. Hook*, 777 So. 2d 1047, 1053 (Fla. Dist. Ct. App. 2001).

### III.    Alliance has failed to prove tortious interference.

Laundrylux is also entitled to summary judgment on Alliance's claim for tortious interference. The elements of that claim are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. *Ethan Allen*, 647 So.2d at 814. A business relationship need not be evidenced by a contract, but it requires "an understanding between the parties [that] would have been completed had the defendant not interfered." *Id.*

Alliance has failed to carry its burden of proof on any of these elements. It has shown only that Laundrylux competed for customers in the marketplace, which Laundrylux has every right to do. As the Eleventh Circuit has explained, "[c]ompetition for business does not constitute tortious interference with a business relationship." *Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1105 (11th Cir. 1983).

### A.    Alliance has failed to prove the requisite business relationship.

Alliance's tortious-interference claim fails at the first step. To satisfy the "business relationship" element, Alliance must prove "an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen*, 647, So. 2d at 815. "A mere offer to

sell" does not "give rise to sufficient legal rights to support a claim of intentional interference with a business relationship." *Id.* at 814 (cleaned up). Nor does the "mere hope" that a company's past customers could "choose to buy [from it] again." *Id.* at 815. In other words, the "relationship" cannot be "based on speculation regarding future sales to past customers." *Id.*

Alliance has offered nothing but "speculation regarding future sales to past customers." *Id.* In responses to interrogatories, Alliance claimed that Laundrylux interfered with the following business relationships:

1. Rusty Owens, new store project in Enterprise, AL;

2. Kevin McDaniel, replacement deal;

3. Jim and Carol Hochstetler, Suds N Duds Coin Laundry;

4. Greg Tell;

5. Dylan Maloney, 4313 Downtowner Loop;

6. Michael Cheeks;

7. Hasty Laney;

8. Steve Demeter;

9. Hal Densman; and

10. Sing Bouapha.

Ex.50 (Interrogatory 21).

Data Laundrylux produced in discovery show that Laundrylux made sales to only four of these prospects: Rusty Owens, Michael Cheeks, Hasty Laney, and Stephen Demeter. Exs.51, 51-1 (Interrogatory 11). The other six are irrelevant because a mere unsuccessful attempt to pursue customers is not tortious interference. *E.g.*, *Yuyo's Towing, Inc. v. Best Towing, Inc.*, 2024 WL 5111693, at *4 (M.D. Fla. Dec. 13, 2024) (dismissing claim where plaintiff "establishe[d] nothing more than mere attempts to breach these business relationships"); *Balesia Techs., Inc. v. Cuellar*, 2023 WL 3491214, at *2 (S.D. Fla. May 17, 2023) (same).[9]

As to the four prospects, the evidence shows that Alliance sent them only *quotes*—i.e., "mere offer[s] to sell." *Ethan Allen*, 647, So.2d at 814. As Alliance's 30(b)(6) representative acknowledged, ███████████████████████████ ███████████████████████████████. Ex.1.119:20-122:25. Alliance has *admitted* that:

> ➢ Alliance never signed contractual agreements with any of the four prospects for the deals at issue. Ex.52 (RFA Responses 19, 24, 25, 26).

---

[9] Allegations that Williams "dragg[ed] his feet" on two customers while still employed by Alliance, and that Laundrylux attempted to win their business, are irrelevant because Laundrylux never made a sale to those customers (the McDaniel brothers). AC¶46; Ex.42. Moreover, Williams handed off the McDaniels' information to his former *Alliance* manager, who completed the sale to them. Ex.43-44.

➢ ████████████████████████████████████████████
  ████. Ex.1 123-130, 139-144.

➢ Alliance did not have exclusivity agreements with any of the four
  prospects. Ex.52 (RFA Responses 29, 34, 35, 36); Ex.1 117:23-118:9.

➢ ██████████████████████████████ Ex.1 117:23-118:9, 119:20-122:25.

While Alliance may have sold to some of the prospects in the past, ███████

████████████████████████████████████████████████

████████████████████████████ █████████████████████

████████████████████████████████████████

████████████ Ex.3 182:1-7.

Alliance's failure to show "the existence of an advantageous business
relationship under which [it] ha[d] legal rights" is dispositive. *Royal Typewriter*, 719
F.2d at 1104; *see also, e.g.*, *Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth.*, 2008 WL
1925088, at *12 (M.D. Fla. Apr. 29, 2008), *aff'd*, 301 F. App'x 881 (11th Cir. 2008).

## B.    Alliance has failed to prove Laundrylux's knowledge.

Because Alliance has not shown any business relationship in which it had
existing or prospective legal rights, it has necessarily failed to prove that Laundrylux

---

[10] *See, e.g.*, Ex.1 117-122; Ex.2 168:3-21; Ex.3 183:5-13; Ex.4 66:16-67:2, 71;
Ex.5 28:18-29:11, 39:15-23, 218:24-219:2; Ex.6 21:16-22:8; Ex.10 95:13-23,
Ex.12 98:4-16.

had knowledge of any such relationship. *See Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 2024 WL 2332167, at *6 (M.D. Fla. Mar. 13, 2024).

Critically, it is not enough that Laundrylux may have known about a potential customer that bought from Alliance in the past. Alliance must show that Laundrylux was aware of "the contractual relationships that afforded [Alliance] existing or prospective legal rights." *NoNaNi Ent., LLC v. Live Nation Worldwide*, Inc., 2022 WL 17539685, at *3 (M.D. Fla. Dec. 8, 2022). It has not done so.

### C.    Alliance has failed to prove actionable interference.

Again, there is nothing wrong with competing for customers in an open market. When a company has no contractual right to a customer's business, and merely "an expectancy," a competitor "has the privilege of interference in order to acquire the business for himself." *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015); *see also* Restatement (Second) of Torts § 768 (1979) (same).

*Unjustified* interference requires proof that Laundrylux used "improper methods" like "physical violence, misrepresentations, illegal conduct, and threats of illegal conduct." *Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1214 (S.D. Fla. 2021) (cleaned up). Alliance suggests that the use of confidential

information would be an "improper method," but it has cited no supporting authority. *See* Dkt.110 15-18. Summary judgment should be granted for that reason alone.[11]

Even assuming use of confidential information would be an "improper method," Alliance has not shown that Laundrylux used Alliance's confidential information to compete for customers. The only relevant allegations of unjustified interference are in AC ¶¶41-43, alleging that Williams sent Adams an Alliance customer quote, which Laundrylux then used to prepare a successful competing quote. But the customer in question was Rusty Owens, a close personal friend of both Williams and Laundrylux employee Jason Fleck. Ex.10.202:18-203:10; Ex.54.17:25-18:6. Fleck asked Owens about his laundry needs for his new store, and Owens asked Williams to send Alliance's quote to Laundrylux. Ex.53; Williams Ex.54 181:15-183:13. Owens was entitled to share that quote with whomever he wanted, including Alliance's competitors. *See supra* at 23-24. And even if *Williams*—still an Alliance employee—should have declined Owens's request, that has nothing to do with *Laundrylux*. Laundrylux, Fleck, and Adams were entitled to compete for Owens's business, and the only information they used—Owens's

---

[11] Alliance cannot allege that trade-secret misappropriation is the "improper method" because (1) Alliance has not proven trade-secret misappropriation, and (2) the FUTSA preempts tort claims based on trade-secret misappropriation. *See* Dkt.101-1 at 13-15. As explained in Defendants' incorporated motion to dismiss, FUTSA preemption applies even where information does not rise to the level of a trade secret. *Id.*

Alliance quote—was information Owens could share as he pleased. *E.g.*, *Thomas v. Alloy Fasteners, Inc.*, 664 So. 2d 59, 60 (Fla. Dist. Ct. App. 1995) ("In the absence of a noncompete contract, [a former employee] is free to contact old customers.") (collecting cases). Were it otherwise, no customer would be permitted to shop for the best quote. But that's not the law.

Alliance has accordingly failed to establish Laundrylux's unjustified and wrongful interference with its business relationships.

### D.    Damages should at least be limited.

If the Court were to permit Alliance to prove damages at this late stage, which it should not, damages should be limited to whatever profits Alliance can prove it lost from Laundrylux's alleged wrongful interference with the only four customers to whom Laundrylux made sales: Rusty Owens, Michael Cheeks, Hastey Laney, and Stephen Demeter.

## CONCLUSION

Laundrylux asks the Court to grant summary judgment in its favor on all claims.

Dated:  March 14, 2025

*/s/ David. A. Perez*
_____
David A. Perez (admitted pro hac vice)
Evelyn Pang (admitted pro hac vice)
David Watnick (admitted pro hac vice)
Shireen Lankarani (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036
Tel:  (212) 262-6900
Fax:  (212) 977-1649

*/s/ Beth-Ann E. Krimsky*
_____
Beth-Ann E. Krimsky
Florida Bar No. 968412
**GREENSPOON MARDER LLP**
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 527-2427
Fax: (954) 333-4027

*Attorneys for Defendant Autarkic
Holdings, Inc. d/b/a Laundrylux*

## WORD COUNT CERTIFICATION

Defendants' Memorandum of Law contains 7,933 words (including the text, headings, footnotes, and quotations, but excluding the table of contents, table of authorities, case caption, signature block, and certificate of service) and therefore complies with the 8,000-word limit in Local Rule 7.1(F).

Dated:  March 14, 2025

*/s/ David A. Perez*

David A. Perez (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036
Tel:  (212) 262-6900
Fax:  (212) 977-1649

*Attorneys for Defendant Autarkic
Holdings, Inc. d/b/a Laundrylux*