UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| ALLIANCE LAUNDRY SYSTEMS LLC, | | |
| Plaintiff, | | |
| v. | | Case No. 23-cv-22130 (MCR) |
| TRUDY ADAMS, JOHN "CLAY" WILLIAMS and AUTARKIC HOLDINGS, INC. D/B/A LAUNDRYLUX, | | |
| Defendants. | | |
| TRUDY ADAMS, JOHN "CLAY" WILLIAMS, | | |
| Defendants/Counterclaim Plaintiffs, | | |
| v. | | |
| ALLIANCE LAUNDRY SYSTEMS LLC, | | |
| Plaintiff/Counterclaim Defendant/ Third Party Defendant, | | |
| and | | |
| MIKE HAND, SAMANTHA BAKER and GREG REESE, | | |
| Third-Party Defendants. | | |

**LAUNDRYLUX'S OPPOSITION TO
ALLIANCE'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................2

    I.    Alliance cannot recover damages on any of its claims. .......................2

        A.    Alliance has conceded that its failure to prove damages forecloses any monetary recovery. ............................................3

        B.    Alliance is not entitled to prove damages in an "evidentiary hearing" after trial. .................................................5

        C.    Alliance is not entitled to injunctive relief either. ......................8

    II.    Alliance has failed to prove trade-secret misappropriation. ..............10

        A.    Alliance has failed to prove a "trade secret."...........................10

        B.    Alliance has failed to prove misappropriation.........................24

        C.    Alliance cannot recover exemplary damages. ..........................26

    III.    Alliance's FUTSA claim preempts its tortious-interference claim. .................................................................................................27

    IV.    Alliance has failed to prove tortious interference. .............................28

        A.    Alliance has failed to prove the requisite business relationship................................................................................29

        B.    Alliance has failed to prove Laundrylux's knowledge. ............32

        C.    Alliance has failed to prove actionable interference.................32

CONCLUSION ................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*,
    432 F. Supp. 2d 1319 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501
    (11th Cir. 2008)..............................................................................2, 3

*Am. Registry, LLC v. Hanaw*,
    2014 WL 12606501 (M.D. Fla. July 16, 2014) ......................................27, 28, 33

*B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*,
    758 F. App'x 785 (11th Cir. 2018) ....................................................31

*Balesia Techs., Inc. v. Cuellar*,
    2023 WL 3491214 (S.D. Fla. May 17, 2023)....................................30

*Diamond Power Int'l, Inc. v. Davidson*,
    540 F. Supp. 2d 1322 (N.D. Ga. 2007)........................................22, 23

*Duty Free Americas, Inc. v. Estee Lauder Cos.*,
    797 F.3d 1248 (11th Cir. 2015) ............................................31, 32, 33

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
    647 So. 2d 812 (Fla. 1994) ...........................................................passim

*Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*,
    21 F.4th 1267 (11th Cir. 2021) ...........................................................9

*Freedom Med., Inc. v. Sewpersaud*,
    469 F. Supp. 3d 1269 (M.D. Fla. 2020), *order clarified*, 2020 WL
    3487642 (M.D. Fla. June 25, 2020)............................................23, 24

*Gilmour v. Gates, McDonald & Co.*,
    382 F.3d 1312 (11th Cir. 2004) ........................................................13

*Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n, Inc.*,
    595 F.3d 1203 (11th Cir. 2010) ...........................................................2

*Hennegan Co. v. Arriola*,
    855 F. Supp. 2d 1354 (S.D. Fla. 2012)..............................................14

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,
   439 F.3d 1286 (11th Cir. 2006) ........................................................................13

*In re Seven Stars on Hudson Corp.*,
   637 B.R. 180 (Bankr. S.D. Fla. 2022), *aff'd sub nom. In re Seven
   Stars on the Hudson Corp.*, 2023 WL 4760713 (11th Cir. July 26,
   2023) ..............................................................................................................3, 4

*M.C. Dean, Inc. v. City of Miami Beach*,
   199 F. Supp. 3d 1349 (S.D. Fla. 2016) ........................................................10, 14

*Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth.*,
   2008 WL 1925088 (M.D. Fla. Apr. 29, 2008), *aff'd*, 301 F. App'x
   881 (11th Cir. 2008)..........................................................................................31

*MD Assocs. v. Friedman*,
   556 So. 2d 1158 (Fla. Dist. Ct. App. 1990)........................................................31

*Measured Wealth Priv. Client Grp., LLC v. Foster*,
   2020 WL 3963716 (S.D. Fla. July 13, 2020) ....................................................28

*Mercer Glob. Advisors Inc. v. Crowley*,
   2023 WL 2531727 (N.D. Ga. Mar. 15, 2023) ....................................................28

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*,
   808 F. Supp. 1555 (S.D. Fla. 1992), *aff'd sub nom. Merrill Lynch,
   Pierce v. Hegarty*, 2 F.3d 405 (11th Cir. 1993)................................................24

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
   429 F.3d 1344 (Fed. Cir. 2005) ........................................................................12

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   10 F.4th 1358 (Fed. Cir. 2021) ........................................................................12

*New Lenox Indus., Inc. v. Fenton*,
   510 F. Supp. 2d 893 (M.D. Fla. 2007)................................................................27

*NoNaNi Ent., LLC v. Live Nation Worldwide, Inc.*,
   2022 WL 17539685 (M.D. Fla. Dec. 8, 2022) ..................................................32

# TABLE OF AUTHORITIES
## (cont.)

Page(s)

*Norton v. Am. LED Tech., Inc.*,
  245 So. 3d 968 (Fla. Dist. Ct. App. 2018) ............................................................9

*Pals Grp., Inc. v. Quiskeya Trading Corp.*,
  2017 WL 532299 (S.D. Fla. Feb. 9, 2017) ........................................................21

*Perdue Farms Inc. v. Hook*,
  777 So. 2d 1047 (Fla. Dist. Ct. App. 2001) ..........................................6, 7, 8, 26

*Pizarro v. Home Depot, Inc.*,
  111 F.4th 1165 (11th Cir. 2024), *cert. petition docketed*, No. 24-
  620 (U.S. Dec. 6, 2024) ......................................................................................8

*RLI Ins. Co. v. Banks*,
  2015 WL 400540 (N.D. Ga. Jan. 28, 2015) ......................................................28

*Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*,
  925 F.2d 174 (7th Cir. 1991) ......................................................................15, 16

*Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic
  Supplies Corp.*,
  719 F.2d 1092 (11th Cir. 1983) .........................................................................32

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984) ...........................................................................14, 15, 16

*Rustik Haws, LLC v. Identiqa Sols. Co.*,
  2025 WL 470225 (M.D. Fla. Feb. 12, 2025) ...............................................6, 7, 8

*S. Grouts & Mortars, Inc. v. 3M Co.*,
  575 F.3d 1235 (11th Cir. 2009) .........................................................................13

*Shenzhen Kinwong Elec. Co. v. Kukreja*,
  574 F. Supp. 3d 1191 (S.D. Fla. 2021) ..............................................................33

*Soderbeck v. Burnett County*,
  821 F.2d 446 (7th Cir. 1987) .............................................................................12

# TABLE OF AUTHORITIES
## (cont.)

Page(s)

*Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*,
  904 F.3d 1197 (11th Cir. 2018) .............................................................................4

*Sw. Stainless, LP v. Sappington*,
  582 F.3d 1176 (10th Cir. 2009) ..........................................................................14

*Templeton v. Creative Loafing Tampa, Inc.*,
  552 So. 2d 288 (Fla. Dist. Ct. App. 1989) .........................................................21

*Thomas v. Alloy Fasteners, Inc.*,
  664 So. 2d 59 (Fla. Dist. Ct. App. 1995).......................................................9, 32

*United States v. Lange*,
  312 F.3d 263 (7th Cir. 2002) .......................................................................15, 16

*VAS Aero Services, LLC v. Arroyo*,
  860 F. Supp. 2d 1349 (S.D. Fla. 2012)...............................................................23

*Worldwide Primates, Inc. v. McGreal*,
  26 F.3d 1089 (11th Cir. 1994) ............................................................................30

*WWMAP, LLC v. Birth Your Way Midwifery*,
  711 F. Supp. 3d 1313 (N.D. Fla. 2024) ..............................................................15

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,
  898 F.3d 1279 (11th Cir. 2018) .............................................................18, 22, 23

*Yuyo's Towing, Inc. v. Best Towing, Inc.*,
  2024 WL 5111693 (M.D. Fla. Dec. 13, 2024) ...................................................30

**STATUTES**

Defend Trade Secrets Act, 18 U.S.C. § 1836 .......................................................2, 3

Fla. Stat. Ann. § 688.004(2).......................................................................................7

Fla. Stat. § 688.008(1)..............................................................................................27

Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.001-009.......................passim

## <u>TABLE OF AUTHORITIES</u>
### (cont.)

**Page(s)**

**RULES**

Fed. R. Civ. P. 26(a).............................................................................1, 3

Fed. R. Civ. P. 26(e).........................................................................11, 12

Fed. R. Civ. P. 37(c)..............................................................................11

Fed. R. Civ. P. 55...............................................................................6, 7

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 768 (Am. L. Inst. 1979) ......................................33

## INTRODUCTION

Alliance has conceded defeat. It admits that summary judgment is required where the plaintiff—Alliance here—"fails to present evidence justifying any amount on a claim for economic damages." Dkt.168 at 21–22.

Under that standard, Alliance loses. As Laundrylux explained in its motion for summary judgment ("MSJ"), Alliance has not presented *any* evidence of damages. Dkt.157 at 9–14. It did not provide the "computation of damages" required by Rule 26(a); it refused to provide a damages calculation in response to interrogatories; it failed to provide evidence of damages via its 30(b)(6) representative or any other witness; and it never retained a damages expert. There is thus no basis—none—for awarding damages on Alliance's claims. That should be the end of Alliance's suit.

Alliance's claims fail for additional reasons as well. Its trade-secret misappropriation claims fail because, among other things, no reasonable jury could find that Alliance properly protected the information it now claims was "secret."[1] And its tortious-interference claim fails because, among other things, Alliance has not identified a single transaction that would have been completed but for Laundrylux's supposed interference.

---

[1] This opposition incorporates the Statement of Facts and Legal Standard for Summary Judgment set forth in Laundrylux's MSJ. Dkt.157 at 3–7, 8–9.

Alliance has doomed its own case. By failing to provide either a computation of damages or any supporting evidence, Alliance has foreclosed the possibility of monetary recovery. By failing to protect its information, Alliance has forfeited any claim to trade secrecy. And by failing to introduce evidence of any relationship in which it had actionable legal rights, Alliance has fatally undermined its tortious-interference claim. Laundrylux is entitled to summary judgment—not Alliance.

## ARGUMENT

### I.    Alliance cannot recover damages on any of its claims.

Alliance brings three claims against Laundrylux: (1) trade-secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (2) trade-secret misappropriation under Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. §§ 688.001–009; and (3) tortious interference. Dkt.98 at 13–19, 21–22.

Each cause of action naturally requires, as a prerequisite for monetary damages, proof of damages. In *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 432 F. Supp. 2d 1319 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008), for example, the court granted judgment as a matter of law on a FUTSA claim where plaintiff "presented no evidence by which the jury could value its damages relating to misappropriation of trade secrets." *Id.* at 1339. Examining the statute and relevant case law, the court concluded that "a claim for damages

under the FUTSA requires proof of damages." *Id.* at 1337. A request for nominal damages is insufficient; the statute requires proof of actual loss, unjust enrichment, or the value of a reasonable royalty. *Id.* at 1335–36. The DTSA likewise requires, as a prerequisite damages, proof of actual loss, unjust enrichment, or the value of a reasonable royalty. 18 U.S.C. § 1836(b)(3)(B). And proof of damage is one of the four elements of a tortious-interference claim. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).

Because Alliance proffers no damages evidence, Laundrylux is entitled to summary judgment on all of Alliance's claims for monetary relief.

### A. Alliance has conceded that its failure to prove damages forecloses any monetary recovery.

As Laundrylux explained in its MSJ, Alliance has provided neither a computation of damages nor evidence upon which a damages award could be based. Dkt.157 at 9–14. Alliance refused to submit the "computation of damages" required by Rule 26(a); refused to provide a computation of damages in response to Laundrylux's interrogatory requesting that information; and refused to answer a similar interrogatory propounded by Adams. *Id.* Nor did Alliance provide damages evidence in any other form: not in a declaration, not in the testimony of its 30(b)(6) representative, not in the testimony of any other witness, and not via an expert report. *Id.* at 13–14. There are thus "[n]o calculations, no mathematical formulas, no methods of computation, nor even any underlying factual basis for the damages"

Alliance seeks. *In re Seven Stars on Hudson Corp.*, 637 B.R. 180, 194 (Bankr. S.D. Fla. 2022), *aff'd sub nom. In re Seven Stars on the Hudson Corp.*, 2023 WL 4760713 (11th Cir. July 26, 2023).

This failure of proof precludes Alliance from recovering monetary damages. *Id.* at 211. "Under Florida law, a plaintiff has the burden to present evidence justifying a specific and definite amount of economic damages." *Id.* at 202 (cleaned up). "If the finder of fact is not presented with evidence that will enable it to determine damages with a reasonable degree of certainty, rather than by means of speculation and conjecture, then the plaintiff cannot recover those damages." *Id.* at 202–03 (cleaned up). "Thus, for any claim as to which a plaintiff fails to present evidence justifying any amount on a claim for economic damages, the defendant will be entitled to judgment in its favor on that claim." *Id.* at 203; *see also Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1222 (11th Cir. 2018) (same).

Alliance agrees. In moving for summary judgment on the counterclaims brought by Adams and Williams (collectively, the "Salespeople"), Alliance admits that the failure to prove damages precludes any claim for monetary relief:

> "Economic damages may not be founded on [mere] speculation or guesswork and must rest on some reasonable factual basis." Thus, when a plaintiff fails to present evidence justifying any amount on a claim for economic damages, summary judgment is appropriate. It is not the responsibility of the party against which the claims of breach are lodged to guess at the other's damages. Where the complaining party fails to

disclose damages calculations prior the close of discovery they force the defendant—and the court—to speculate about the amount of damages.

Dkt.168 at 21–22 (internal citations omitted).

*Those are Alliance's own words*. Alliance goes on to say that the Salespeople had "an obligation to properly articulate their damages"; that "neither Williams nor Adams provide[d] dollar figures that would allow this Court to award damages to either"; that it is not enough to say "that there *would be* damages if Adams or Williams had more information"; and that summary judgment is required because "Adams and Williams have failed to provide any basis for a specific amount of damages." *Id.* at 22–24.

What is good for the goose is good for the gander. Changing only the subject of each sentence above: Alliance had "an obligation to properly articulate [its] damages"; Alliance failed to provide "dollar figures that would allow this Court to award damages"; it is not enough to say "that there *would be* damages if [Alliance] had more information"; and summary judgment is required because Alliance "failed to provide any basis for a specific amount of damages." *Id.* at 22–24.

Enough said. *Laundrylux* is entitled to summary judgment on all of Alliance's claims for monetary damages.

**B.    Alliance is not entitled to prove damages in an "evidentiary hearing" after trial.**

In a last-ditch effort to escape the hole it has dug for itself, Alliance suggests

it should be allowed to prove damages via some sort of "evidentiary hearing," apparently after trial:

> The extent of the damages incurred by Alliance, including the allocation of punitive and exemplary damages, should be determined at an evidentiary hearing after the Court rules on Alliance's Motion for Summary Judgment. *See e.g. Rustik Haws, LLC v. Identiqa Sols. Co.*, No. 8:21-CV-00565-MSS-AEP, 2025 WL 470225, at *4 (M.D. Fla. Feb. 12, 2025) (setting a damages award "via a hearing" once the necessary facts were established to prove liability); *Perdue*, 777 So. 2d at 1050 (awarding trade secret misappropriation damages "[i]n posttrial proceedings")

Dkt.167 at 41.

The two cases Alliance cites for this outlandish theory are entirely inapposite. The first case, *Rustik Haws, LLC v. Identiqa Sols. Co.*, involved a *default judgment*, which are governed by special rules. Rule 55—titled "Default; Default Judgment"—provides that when a defendant "has failed to plead or otherwise defend," the clerk "must enter the [defendant's] default." Fed. R. Civ. P. 55(a). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount …" Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "The court may conduct hearings or make referrals … when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

*Id.*

Rule 55 thus contemplates the possibility of a hearing to determine damages in the context of a default judgment, where the defendant has not participated in litigation or discovery. That's what happened in the *Rustik* case. *See Rustik*, 2025 WL 470225, at \*15. But Rule 55 obviously doesn't apply here, so *Rustik* provides no support for Alliance's position.

The second case, *Perdue Farms Inc. v. Hook*, 777 So. 2d 1047 (Fla. Dist. Ct. App. 2001), involved *exemplary damages* under the FUTSA. *Id.* at 1050. The FUTSA provides that "[i]f willful and malicious misappropriation exists, *the court may award exemplary damages in an amount not exceeding twice any award*" of compensatory damages. Fla. Stat. Ann. § 688.004(2) (emphasis added). The statute thus "[takes] from the jury the issue of exemplary damages" and gives it to the court, which may award exemplary damages *after the jury awards compensatory damages*. *Perdue*, 777 So. 2d at 1052. But we are not at that stage—and never will be— because *Alliance has not mustered the evidence required to submit its claims to the jury in the first place*. With no basis for a jury to award compensatory damages, the court cannot award exemplary damages via the statutory post-trial procedure. And the FUTSA certainly does not permit a plaintiff to prove *compensatory damages* during a post-trial proceeding; those must be substantiated with evidence during discovery and found by a jury in the normal course. *Perdue* thus provides no support

for Alliance's position either.

Indeed, Alliance's invocation of *Rustik* and *Perdue* underscores the weakness of its position. Having produced neither a computation of damages nor evidence of damages, and without any authority that would excuse its failure to do so, Alliance resorts to cases that obviously have no bearing here. Neither *Rustik* nor *Perdue* says that a plaintiff can ignore the Federal Rules of Civil Procedure, refuse to comply with its discovery obligations, and fail to produce a single scrap of evidence on damages—only to somehow get a mulligan in an "evidentiary hearing" after trial. No other authority says that either. Alliance's campaign for damages is over.

### C.    Alliance is not entitled to injunctive relief either.

In one unexplained part of one sentence, Alliance claims it is "entitled to equitable relief" on its trade-secrets claims. Dkt.167 at 41. But Alliance makes no argument for such relief—it simply asserts that it is "entitled" to it. While this failure likely results in an abandonment of the remedy, *see Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1182 (11th Cir. 2024) (plaintiffs forfeited claim for equitable relief by making only a "perfunctory reference" to it), *cert. petition docketed*, No. 24-620 (U.S. Dec. 6, 2024), it *at least* bars an award of injunctive relief on summary judgment.

Permanent injunctive relief requires "(1) success on the merits; (2) continuing irreparable injury; and (3) no adequate remedy at law." *Keener v. Convergys Corp.*,

342 F.3d 1264, 1269 (11th Cir. 2003). Moreover, any injunction would have to "describe the restrained acts in reasonable detail"; be "narrowly tailed" to "proven legal violations" involving "specific, identifiable trade secrets"; be limited in time and geographic scope; and allow for legitimate competition. *Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 21 F.4th 1267, 1280–81 (11th Cir. 2021); *see also, e.g.*, *Norton v. Am. LED Tech., Inc.*, 245 So. 3d 968, 969 (Fla. Dist. Ct. App. 2018) (the FUTSA "may not be used as a vehicle to restrict competition"); *Thomas v. Alloy Fasteners, Inc.*, 664 So. 2d 59, 60 (Fla. Dist. Ct. App. 1995) (striking provision that prohibited former employee from contacting old customers and collecting similar cases).

Alliance does not even address the *standard* for injunctive relief, much less attempt to show that it would be satisfied here. Nor does it address any of the critical questions that would have to be answered to craft an appropriate order. Alliance's near total inattention to this issue shows how little it cares about injunctive relief. Clearly Alliance's suit is about damages, which it cannot recover because it has presented no damages evidence.

Regardless, Alliance is not entitled to injunctive relief because it has not shown that Laundrylux misappropriated any information that meets the legal definition of a trade secret or that it is engaged in any ongoing conduct whatsoever for which injunctive relief would be appropriate. *See infra* at 10–26; *see also*

Dkt.157 at 14–32. Alliance failed to move for a temporary restraining order or a preliminary injunction at the beginning of this case, which it could have if it genuinely believed it was experiencing ongoing injury. Alliance's throw-away reference to "equitable relief" is meaningless and comes nowhere close to justifying injunctive relief.

## II.    Alliance has failed to prove trade-secret misappropriation.

Alliance moves for summary judgment on its trade-secrets claims, but its motion only underscores why summary judgment must be granted in favor of *Laundrylux*. Alliance has not met its "burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *M.C. Dean, Inc. v. City of Miami Beach*, 199 F. Supp. 3d 1349, 1353 (S.D. Fla. 2016) (citation omitted). Nor has it introduced evidence showing Laundrylux knew or should have known the information was improperly obtained.

### A.    Alliance has failed to prove a "trade secret."

No category of information Alliance claims to be an actionable trade secret qualifies as such for the reasons explained in Laundrylux's MSJ (Dkt.157 at 14–29) and the additional reasons set forth below.

### 1)    New categories of documents/information

For the first time in this litigation, Alliance claims in its MSJ that Laundrylux misappropriated ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Dkt.167 at 20–21.

Alliance cannot assert those categories of information as purported trade
secrets because—continuing a theme—Alliance did not disclose them in response to
Laundrylux's interrogatory asking Alliance to "[i]dentify, with specificity, which
'Alliance Confidential Information' is 'protected as trade secret information.'"
Ex.49 (Interrogatory 8).[2] Alliance answered that interrogatory by listing *only* the
categories of information discussed in Laundrylux's MSJ. *Id.*

Alliance cannot now introduce other categories of information it never
mentioned before. Rule 26(e) requires a party "who has responded to an
interrogatory" to "supplement or correct" its response "in a timely manner if the
party learns that in some material respect the … response is incomplete or incorrect."
Fed. R. Civ. P. 26(e). And Rule 37(c) provides that if a party fails to provide
information required by Rule 26(e), "the party is not allowed to use that information
… to supply evidence on a motion, at a hearing, or at a trial, unless the failure was
substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Rules 26(e) and 37(c) together require exclusion of the new categories

---

[2] All record evidence is concurrently filed with the Declaration of David
Perez in Opposition to Alliance's Motion for Summary Judgment.

referenced for the first time in Alliance's MSJ. Courts routinely exclude evidence omitted from interrogatory responses under those rules. As in those cases, exclusion is required here because (1) Alliance has no justification for failing to correct its interrogatories, and (2) Laundrylux would be prejudiced by the admission of evidence it had no opportunity to explore in discovery.[3]

Exclusion is also required because the documents Alliances cites as evidence for the new categories are—with one exception[4]—emails sent by former Alliance employee *Jason Fleck in 2022*. *See* Dkt.163 ("Stein Decl.") ¶¶7(f), (h)–(j). To the extent Alliance is attempting to belatedly allege that Fleck misappropriated trade secrets in 2022, *Alliance did not make those allegations in its operative complaint.*

---

[3] *See, e.g.*, *Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n, Inc.*, 595 F.3d 1203, 1210–13 (11th Cir. 2010) (affirming exclusion of evidence under Rule 37 where party failed to timely supplement interrogatories); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1372 (Fed. Cir. 2021) (affirming exclusion of evidence under Rule 37 and observing that "Rule 26(e) expressly requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, must be corrected or supplemented to reflect those changes"); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1356–58 (Fed. Cir. 2005) (excluding non-expert damages theories for failure to supplement interrogatories); *Soderbeck v. Burnett County*, 821 F.2d 446, 453 (7th Cir. 1987) ("[T]he court may prohibit [a] party from introducing into evidence matters that were requested but not disclosed in [response to] interrogatories.").

[4] The exception is an email chain Adams forwarded *to her personal email* regarding financing for a customer. *See* Stein Decl. Ex.6. That email chain is irrelevant because Alliance has not shown that it was sent to anyone at Laundrylux or at Laundrylux's direction.

Alliance alleged that the Salespeople took trade-secret information to Laundrylux in 2023, not that Fleck did so in 2022. Alliance "may not amend [its] complaint through argument" in summary-judgment briefing. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (holding that *Gilmour* applies both to new claims and to new facts that provide additional bases for existing claims).[5]

Regardless, Alliance has not met its burden of showing that any of the new categories of information were both secret and adequately protected. Consider the ███████████████ for example. Stein Decl. Ex.9. The document is not marked confidential and was prepared for customers, who could presumably share it with whomever they liked. *Cf.* Ex.4 48:24–49:14. Moreover, Alliance has not said what measures, if any, it took to keep ███████████ secret. Those same types of arguments apply to the other undisclosed categories that Alliance should be barred from citing as evidence for its claims.

### 2)    Documents disclosed without restrictions

Demographic reports, photos of customer equipment (including voltage

---

[5] The only even arguable allusion to the new Fleck claim is the allegation, in the background section of the Amended Complaint, that before this suit was filed, "Laundrylux actively recruited and hired former Alliance employees" who "also used Alliance's confidential, proprietary, and trade secret information." AC ¶54. But Alliance does not allege who those employees were or what they took. Alliance thus failed to provide sufficient notice of a claim based on Fleck's alleged taking of trade secrets. *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1243 (11th Cir. 2009).

requirements), floor plans/drawings, and customer quotes are not trade secrets as matter of law for two reasons.

*First*, it is undisputed that those documents were shared with customers without restrictions. *See* Dkt.157 at 16–18, 20–24. That is dispositive: "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information," his "property right" in the trade secret "extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see also M.C. Dean, Inc.*, 199 F. Supp. 3d at 1353 (same); *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1190 (10th Cir. 2009) (holding price list was not a trade secret despite employee's execution of confidentiality agreement where competitor could acquire the information simply by requesting it from a customer); *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012) (rejecting trade-secret claim where company "provided [salesperson] with the pricing information and permitted him to share that information with potential customers without requiring those customers to refrain from disclosing the pricing information to others").

Alliance argues that "█████████████████████████████ ███████████████████████████████████████████████ ██████████████." Dkt.167 at 33. But we are not dealing with "█████ ████████" here. Alliance disclosed the information to customers with *no restrictions whatsoever*. The customers could, and did, share it with whomever they

pleased.

Courts have made clear that there is a critical difference between "███████ ███████████" to particular people for particular purposes and disclosure to people who are "under no obligation to protect the confidentiality of the information." *Ruckelshaus*, 467 U.S. at 1002. Alliance cites *WWMAP, LLC v. Birth Your Way Midwifery*, 711 F. Supp. 3d 1313 (N.D. Fla. 2024), which observes that a business might need to share its customer lists with members of its own "sales or marketing departments," and that a "a manufacturer might need to share blueprints or schematics with a subcontractor who will provide components of a machine." *Id.* at 1322 n.2. But the implication is that the dissemination will stop there. That implication is made explicit in two cases *WWMAP* cites: *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174 (7th Cir. 1991) (Posner, J.), and *United States v. Lange*, 312 F.3d 263 (7th Cir. 2002) (Easterbrook, J.).

In *Rockwell*, a company gave "piece part drawings" to vendors to manufacture parts. 925 F.2d at 175. The Seventh Circuit held that "[t]he mere fact that [the company] gave piece part drawings to vendors—that is, disclosed its trade secrets to 'a limited number of outsiders for a particular purpose'—did not forfeit trade secret protection" where the vendors were "required to sign confidentiality agreements, and in addition each drawing [was] stamped with a legend stating that it contains proprietary material." *Id.* at 177. By contrast, if the company "had given the piece

part drawings at issue *to customers, and it had done so without requiring the customers to hold them in confidence*," the company would have forfeited its trade-secret claim. *Id.* at 179 (emphasis added). That is exactly what happened here.

*Lange*, 312 F.3d 263, is similar. There, a manufacturer of airplane parts kept its schematics in a "CAD" room protected by a special lock, an alarm system, and a motion detector; marked the schematics confidential; and warned every employee that the schematics were confidential. *Id.* at 266. None of the manufacturer's "subcontractors receive[ed] full copies of the schematics; by dividing the work among vendors, [the manufacturer] ensure[d] that none [could] replicate the product." *Id.* Under those circumstances, the Seventh Circuit held that the manufacturer had not lost trade-secret protection simply because employees "knew where to get the key to the CAD room door" and subcontractors had received partial schematics; that sort of limited dissemination on a need-to-know basis does not undermine a trade-secret claim.

The disclosures here—to customers who had no obligation to keep the information secret—are like those in *Ruckelshaus* and its progeny, not like those in *Rockwell* and *Lange*.

*Second*, Alliance did precious little to keep the information secret. While Alliance claims it had various "policies" on confidential information (Dkt.167 at 23), it appears the Salespeople signed only one such "policy": the Employee Handbook.

It is unclear whether the Salespeople or other employees received the others. Samantha Baker—Alliance's HR director and the person responsible for overseeing policies—testified that ███████████████████████████████████ ████████████████████████████████ Ex.A 192–196.

Similarly, Alliance representatives Craig Dakauskas and Greg Reese testified that

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████. Ex.B 99, 119–20; Ex.C 142–45. And while a member of Alliance's IT department testified that █████████████████████████████████

████████████████████████████████████████████

██████████████. Ex.D 14–15. The other two "██████████████████████

████████████████████████████████████—are not at issue because Alliance's 30(b)(6) representative ████████████████████

████████████████████████████████████████████

██████████████████████████ Ex.E 36–40, 281–82.[6]

The only signed "policy"—the Employee Handbook—never defines

---

[6] Alliance also cites "████████████████████████████
███████████." Dkt.167 at 34. But its 30(b)(6) representative
██████, and there is no evidence about how/when they were supposedly distributed or who saw them. Ex.E 36–40, 281–82.

"confidential information." Ex.38 at 7. Nor do the other "policies" cited by Alliance's 30(b)(6) representative, with the sole exception of the ██████████

████████████████████████████████████████████████████

████" and is thus irrelevant here. Ex.L. In any event, that policy never addresses materials like demographic reports, photos of customer equipment, floor plans/drawings, or customer quotes—all of which Alliance and its employees shared with customers.[7]

Alliance also asserts that it provides "training" on confidentiality (Dkt.167 at 35), but it has not provided supporting documentation. Nor has it shown that it made any express, memorialized efforts to maintain and enforce its policies/trainings before this suit. Ex.A 172:23–173:3; Ex.B 43:8–44:19; Ex.F 152:13–153:3. As the Eleventh Circuit has explained, mere "verbal statements" and "implicit understanding[s]" about confidentiality are inadequate. *See Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1300 (11th Cir. 2018).

Alliance's paltry evidence is insufficient, as a matter of law, to show that it adequately protected demographic reports, equipment photos, floor plans, or

---

[7] *See* Ex.M (████████████████████████████████████████
████████████); Ex.N ████████████████████████████████████████
██████████████████████████████████████████); Ex.O ███████
████████████████████); Ex.P (███████████████████████████████
████████████████████████).

customer quotes, which entitles Laundrylux to summary judgment. At a minimum, factual disputes about Alliance's policies and trainings preclude summary judgment for Alliance.

### 3) Price Sheets

Alliance cannot base its trade-secrets claims on price sheets because there is no evidence that the Salespeople took price sheets to Laundrylux. Alliance cites an exhibit suggesting that Adams emailed Alliance price sheets to her *personal email in March 2023*—weeks before she started working for Laundrylux. Stein Ex.4. But Alliance has produced no evidence showing that Adams forwarded the price sheets to herself or anyone else at Laundrylux after she began working there. Nor has it cited any other evidence showing that Laundrylux obtained price sheets improperly.[8] Price sheets are therefore not at issue, and the Court need go no further.

Even if price lists were at issue, however, they do not qualify as "trade secrets." Alliance observes that price sheets—unlike the other categories of information discussed above—are marked "confidential" and given to third-party distributors pursuant to agreements with confidentiality provisions. Dkt.167 at 30. But while Trey Stein's Declaration purports to attach a ███████████████████ ███████████████████, Stein Ex.12, Stein ████████████████████████████

---

[8] Alliance cites an email suggesting that Jason Fleck "received" price sheets in early 2023, but there is no indication how he "received" them. Dkt.167 at 30–31.

███████████████████████

██████. Ex.E 45:25–46:18, 233:5–23. It is Alliance's burden to prove that it actually required all of its distributors to keep price sheets confidential; having failed to carry that burden, its MSJ must be denied at a minimum.

Moreover, *Laundrylux* is entitled to summary judgment because it is undisputed that Alliance disseminated price sheets to *subdealers* without confidentiality agreements. Ex.1 206–13; Ex.27. And price sheets are generally "out in the marketplace," ███████████████████

██████. Ex.3 202, 244; Ex.2 231:8–19; Ex.27; Dkt.157 at 19–20. Indeed, Alliance representatives—including CEO Mike Schoeb—have received and performed competitive analyses on price sheets from competitors, including Laundrylux. *See* Ex.6 70:9–71:25; Ex.2 63–64, 66:3–20, 147:21–25, 231; Ex.4 131:6–8; Ex.28; Ex.29. Alliance has therefore failed to carry its burden of showing that price lists were truly secret.

### 4) Financial Data

To support its allegation about financial data, Alliance cites ███████████

████████████████. *See* Stein Decl. Ex.7. Alliance has not explained what this heretofore unproduced image represents, how Williams supposedly obtained the spreadsheet, or what he did with it—much less connected the spreadsheet to Laundrylux. This unexplained screenshot, devoid of any context

or provenance, cannot substantiate any trade-secret claim against Laundrylux.

### 5)    Customer Lists

Alliance has not carried its burden with respect to customer lists. Alliance's MSJ makes no effort to show which customer contacts were generated by Alliance and which by the Salespeople. There can be no doubt that at least some of the contacts were generated by the Salespeople; Adams, for example, had compiled an extensive list of contacts *before* working at Alliance. E.g., Dkt.157 at 25. But Alliance does not even try to separate those out.

Moreover, Alliance's MSJ confirms that the lists at issue contain only basic contact information—i.e., names, addresses, and emails. That sort of information can be compiled through Google or purchased through third-party services. As Laundrylux explained in its MSJ (Dkt.157 at 26–27), courts routinely refuse to find protectable trade-secret rights in lists which, as here, simply compile easily ascertainable information. *E.g.*, *Templeton v. Creative Loafing Tampa, Inc.*, 552 So. 2d 288, 289–90 (Fla. Dist. Ct. App. 1989) (collecting cases); *Pals Grp., Inc. v. Quiskeya Trading Corp.*, 2017 WL 532299, at *5 (S.D. Fla. Feb. 9, 2017).

Further, Alliance's efforts to maintain the purported "secrecy" of its customer lists were insufficient as a matter of law for the reasons explained in Laundrylux's MSJ. To reiterate a few key points, the Employee Handbook contains only a generic confidentiality policy that ███████████████████████████████████

███████████████████████████████████. Dkt.157 at 27. ████████████

██████████████████████████████████████████████████

███████████████████████. Moreover, Alliance's 30(b)(6) representative

admitted that ████████████████████████████████████████

██████████████████████████████████████████████████

██████. *See* Ex.E 79–83.

The analogous precedent, therefore, is *Yellowfin*, 898 F.3d 1279. There, as

here, the company "compromised the efficacy" of measures like password-

protection and limited access by "effectively abandon[ing]" oversight over the

information. *Id.* at 1300–01. In *Yellowfin* the company allowed the employee to keep

customer information on his personal devices, just as Alliance allowed the

Salespeople to export customer lists out of databases. *Id.* Fleck and Williams

testified that Alliance allowed salespeople to conduct company business with

company materials on their personal devises, which at minimum creates a factual

dispute precluding summary judgment for Alliance. Ex.G 74:24–76:18; Ex.H

218:25–219:21.

A case *Yellowfin* cites—*Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp.

2d 1322 (N.D. Ga. 2007)—is similar. The court there held that the company's

security measures were insufficient to protect a "Hardware book file" under Georgia

trade-secret law, which parallels the FUTSA, where company "failed to introduce

any evidence that it (1) labeled the file confidential or otherwise communicated the confidentiality of the Hardware Book file directly to its employees, (2) directed its employees to maintain the secrecy of the file (other than through a general confidentiality agreement which did not expressly mention the Hardware book file), or (3) tracked or otherwise regulated the use of its Hardware Book file." *Id.* at 1335.

The cases Alliance cites in its MSJ, by contrast, are inapposite because they involve more robust security measures actually maintained and enforced by the company claiming trade-secret protection. In *VAS Aero Services, LLC v. Arroyo*, 860 F. Supp. 2d 1349 (S.D. Fla. 2012), an aircraft-part company (VAS) protected its contractual agreements with Boeing, which included non-disclosure provisions, by "(1) installing multi-tiered password protections; (2) limiting access to the Kent Facility [shared by VAS and Boeing] to individuals who obtained a security clearance; (3) only permitting a few key employees access to these documents; (4) only permitting access to the databases through VAS's intranet or through its VPN; (5) requiring individuals to have badges to enter the Kent Facility; and (6) mandating key employees who are authorized to view the VAS–Boeing Agreements to choose complex passwords, and, change those passwords every ninety (90) days." *Id.* at 1359. That is far beyond what was done here.

Alliance's other cases are similar, and some also involve non-compete agreements. *See Freedom Med., Inc. v. Sewpersaud*, 469 F. Supp. 3d 1269, 1275

(M.D. Fla. 2020) (non-competition agreement), *order clarified,* 2020 WL 3487642 (M.D. Fla. June 25, 2020); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F. Supp. 1555, 1558 (S.D. Fla. 1992) (non-solicitation agreement), *aff'd sub nom. Merrill Lynch, Pierce v. Hegarty*, 2 F.3d 405 (11th Cir. 1993). In no case were security measures as lax as they were at Alliance. *Cf.* Dkt.167 at 28–29.

Alliance has thus failed to carry its burden of proving an actionable trade secret, which means that Laundrylux (not Alliance) is entitled to summary judgment.

## B.    Alliance has failed to prove misappropriation.

Even if Alliance could prove that some category of information qualifies as a trade secret, it cannot show that *Laundrylux*—as opposed to the Salespeople—misappropriated anything. Alliance's argument on the misappropriation element, which is only two paragraphs long, focuses almost exclusively on the Salespeople. Dkt.167 at 38–39. Alliance mentions Laundrylux only in the following conclusory sentence: "[The Salespeople] used the purloined information to unfairly compete with Alliance and for the benefit, and with the knowledge and encouragement, of Laundrylux in violation of their contractual and legal obligations not to do so." *Id.* at 39. To support that allegation, Alliance cites only its Amended Complaint without a pincite. *Id.* Laundrylux has already explained why nothing in the Amended Complaint shows that Laundrylux knew or should have known that it had acquired trade secrets that were improperly obtained. Dkt.157 at 29–31.

Searching the rest of Alliance's brief, Alliance points to (1) ███████████ ████████████████████████████████████████████████████, Dkt.167 at 12; (2) ████████████████████████████████ ███████████████████████, *id.* at 16; and (3) ███████████ ██████████████████████████████████████████████████ ██████████████████████████████████, *id.* at 19–20. The email chains are immaterial because they do not involve trade secrets; a quote shared with a customer without restrictions is not a trade secret, and the identity of a single potential customer isn't either. *See supra* at 13–18. New allegations about Fleck and others are also immaterial because Alliance cannot add new allegations that aren't in its Amended Complaint. *See supra* at 10–13.[9] Alliance has therefore failed to show misappropriation with respect to Laundrylux.

At the very least, Alliance's MSJ must be denied because Laundrylux representatives have testified that they did not know and had no reason to know that the information at issue was supposedly obtained improperly. *E.g.*, Ex.I 149:4–12,

---

[9] The new allegations are also inconsistent with the record evidence. Each deposed former Alliance employee has testified that Laundrylux never asked them to bring confidential information to Laundrylux. Ex.8 47:13–25; Ex.9 50:1–52:7; Ex.11 136:16–25. Additionally, contrary to Alliance's assertions, Fleck testified that he used his personal laptop at Alliance, was never instructed to return it, and deleted all Alliance-related information from it. Ex.H 37:15–21. Pollesch testified that she regularly used Salesforce for her job responsibilities, not just in the week before her departure. Ex.K 60:18–61:21. At minimum, there are question of fact precluding summary judgment for Laundrylux.

167:12–168:2 ("I'm not aware of that, nor would we need that…I would never ask an employee to [contact Williams and ask for any customers that he was working with from Alliance]."); Ex.10 65:12–24; Ex.J 263:18–264:11, 304:9–14.

### C. Alliance cannot recover exemplary damages.

At a minimum, Alliance cannot possibly recover exemplary damages from Laundrylux. Alliance's argument on exemplary damages focuses *exclusively* on the Salespeople. Dkt.167 at 40. Alliance never mentions Laundrylux, and for good reason: *at worst*, Laundrylux passively received trade secrets freely given to it. Such conduct does not come anywhere close to the level of egregiousness required for exemplary damages.

"Exemplary damages are given solely as a punishment where torts are committed with fraud, actual malice, or deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Perdue Farms Inc.*, 777 So. 2d at 1053. "In negligence, the degree of conduct required to sustain an award of such damages has been characterized as conduct necessary to sustain a conviction for manslaughter." *Id.* "In contract, exemplary damages are not recoverable unless the defendant's conduct constituting the breach of contract rises to the level of an independent tort showing actual malice, moral turpitude, wantonness or outrageousness." *Id.* Under no interpretation of the evidence does Laundrylux's conduct rise to that level of

egregiousness.

### III.   Alliance's FUTSA claim preempts its tortious-interference claim.

In a March 18, 2025 order, the Court said it would consider, on the now-fully-developed record, Laundrylux's argument that Alliance's FUTSA claim preempts its tortious-interference claim. Dkt.170 at 6–7. Laundrylux accordingly presents that argument here.

The FUTSA expressly displaces "conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008(1). FUTSA preemption applies to "all non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret." *See Am. Registry, LLC v. Hanaw*, 2014 WL 12606501, at *6 (M.D. Fla. July 16, 2014). Thus, "[i]n order to pursue claims for additional tort causes of action where there are claims for misappropriation of a trade secret, there must be material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim." *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007).

Here, Alliance's FUTSA claim preempts its tortious-interference claim because there are no material distinctions between them. Both turn on allegations that the Salespeople took supposedly confidential information from Alliance and used it to generate business for Laundrylux. Alliance alleges, for example, that

Laundrylux's purported "interference includes but is not limited to [its] use of Alliance confidential information." AC ¶100. Accordingly, as in *Hanaw*, the tortious-interference claim should be dismissed as duplicative of the FUTSA claim because it "is premised solely on the use of [Alliance's] Proprietary Information. Absent the wrongful conversion of plaintiff's Proprietary Information, there is nothing to suggest that the conversion and solicitation of [Alliance's] customers is tortious." 2014 WL 12606501, at *6; *see also, e.g.*, *Measured Wealth Priv. Client Grp., LLC v. Foster*, 2020 WL 3963716, at *6 (S.D. Fla. July 13, 2020) (tortious-interference claim preempted by FUTSA); *RLI Ins. Co. v. Banks*, 2015 WL 400540, at *2 (N.D. Ga. Jan. 28, 2015) (Georgia Trade Secrets Act preempts breach of duty of loyalty, conversion and breach of fiduciary duty claim); *Mercer Glob. Advisors Inc. v. Crowley*, 2023 WL 2531727, at *10 (N.D. Ga. Mar. 15, 2023) (Georgia Trade Secrets Act preempts claim for breach of duty of loyalty).

## IV.    **Alliance has failed to prove tortious interference.**

If the Court reaches the tortious-interference claim, it should grant summary judgment for *Laundrylux*—not Alliance. *See* Dkt.157 at 34–40. The elements of tortious interference are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) defendant's knowledge of the business relationship; (3) defendant's intentional and unjustified interference with

the relationship; and (4) damage to the plaintiff. *Ethan Allen*, 647 So. 2d at 814. Alliance has failed to muster sufficient evidence on any of these elements.

### A. Alliance has failed to prove the requisite business relationship.

A tortious-interference claim requires, at the outset, proof "an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen*, 647 So. 2d at 815. As Laundrylux explained in its MSJ, Alliance has offered no such evidence. *See* Dkt.157 at 34–37.

Alliance's MSJ only underscores the point. Alliance alleges that it



Dkt.167 at 45–46.[10]

Even assuming the truth of those allegations—and further assuming that Alliance sent a quote to ███████████ although Alliance does not say so— Alliance has shown, at most, that it *offered to sell* to three customers: ███████████ ███████████. Alliance's 30(b)(6) representative confirmed that ████████████████████████████████████████████████████████ ███████. Ex.1 123:14–18, 139:22–140:11, 143:18–24; *see also* Ex.4 147:19–



───────────────

[10] In one vague sentence, Alliance claims that "███████████████████ ████████████████████████████████████████████████████████████ ██████████████████████" Dkt.167 at 11. By "████████████ ██████," Alliance apparently means "received and responded to an email from Adams," because Alliance cites only an email chain showing the named individuals responding to an email from Adams. With the exception of ███████████ (discussed below), Alliance has introduced no evidence showing that Alliance sold to those individuals in the past, that Alliance had sent them any quotes, or that they bought from Laundrylux after Adams's email.

Elsewhere, Alliance appears to allege that Laundrylux *attempted* to interfere with unnamed "Alliance customers" by sending them solicitations. Dkt.167 at 46. But "[a]n integral element of a claim of tortious interference with a business relationship requires proof of damage to the plaintiff *as a result of the breach of the relationship*." *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994) (emphasis added). As such, the interference must have been *successful* to be actionable: "Unsuccessful interference is simply not the kind of interference upon which a tort may be founded." *Id.* at 1092 (cleaned up); *see also, e.g.*, *Yuyo's Towing, Inc. v. Best Towing, Inc.*, 2024 WL 5111693, at *4 (M.D. Fla. Dec. 13, 2024) (dismissing claim where plaintiff "establishe[d] nothing more than mere attempts to breach these business relationships"); *Balesia Techs., Inc. v. Cuellar*, 2023 WL 3491214, at *2 (S.D. Fla. May 17, 2023) (same). Moreover, Alliance has not alleged that it even *quoted* any of those customers, much less that it had an "actual and identifiable understanding" with any of them. *Ethan Allen*, 647 So. 2d at 815.

156:7 (same).

The law is crystal clear that "[a] mere offer to sell" does not "give rise to sufficient legal rights to support a claim of intentional interference with a business relationship." *Ethan Allen*, 647 So. 2d at 814 (cleaned up); s*ee also, e.g.*, *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 758 F. App'x 785, 791 (11th Cir. 2018) (same); *Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1279-80 (11th Cir. 2015) (same); *MD Assocs. v. Friedman*, 556 So. 2d 1158, 1159 (Fla. Dist. Ct. App. 1990) (same). Since Alliance has shown nothing but mere offers to sell, it cannot prove it had sufficient legal rights in any of the three alleged relationships to support a claim of tortious interference.

Moreover, allegations that Alliance had "long-standing" relationships with ███████████████████████████████ are irrelevant. Dkt.167 at 45–46. Alliance's "mere hope that some of its past customers [could] choose to buy again cannot be the basis for a tortious interference claim." *Ethan Allen*, 647 So. 2d at 815. Alliance "may not recover … damages where the 'relationship' is based on speculation regarding future sales to past customers," which is all Alliance offers. *Id.*; *see also, e.g.*, *Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth.*, 2008 WL 1925088, at *16 (M.D. Fla. Apr. 29, 2008) (same), *aff'd*, 301 F. App'x 881 (11th Cir. 2008).

Alliance's failure to substantiate anything beyond a mere offer to sell is dispositive. The Court need go no further to grant Laundrylux summary judgment

on Alliance's tortious-interference claim.

### B.    Alliance has failed to prove Laundrylux's knowledge.

Alliance has likewise failed to substantiate its claim that Laundrylux knew about any "contractual relationships that afforded [Alliance] existing or prospective legal rights." *NoNaNi Ent., LLC v. Live Nation Worldwide, Inc.*, 2022 WL 17539685, at *3 (M.D. Fla. Dec. 8, 2022).

In its MSJ, Alliance says Laundrylux knew that (1) Adams was pursuing a deal with ▮▮▮▮▮▮▮▮ and (2) Williams was pursuing a deal with ▮▮▮▮▮▮▮, who had received a quote from Alliance. Dkt.167 at 45–46. But critically, Alliance does not claim Laundrylux knew of any "actual and identifiable understanding" between Alliance and ▮▮▮▮▮▮▮ that "in all probability would have been completed if [Laundrylux] had not interfered." *Ethan Allen*, 647 So. 2d at 815. Nor could it, because there was no such "actual and identifiable understanding." In the absence of such an understanding, Laundrylux had every right to pursue customers who had done business with Alliance in the past. *See, e.g.*, *Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1105 (11th Cir. 1983); *Thomas*, 664 So. 2d at 60 (collecting cases).

### C.    Alliance has failed to prove actionable interference.

As Laundrylux has explained, it was entitled to compete for former Alliance customers so long as it did not use improper means. *See* Dkt.157 at 38–40; *Duty*

*Free Ams., Inc.*, 797 F.3d at 1280; Restatement (Second) of Torts § 768 (Am. L. Inst. 1979); *Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1214 (S.D. Fla. 2021). And Alliance has not shown that use of confidential information would be an "improper method," which alone warrants summary judgment.[11]

Even assuming use of confidential information would be an "improper method," Alliance has not shown that Laundrylux used Alliance's confidential information to compete for customers. Alliance's MSJ, like its Amended Complaint, focuses on allegations that Laundrylux used an Alliance quote to solicit business from ███████████ *See* Dkt.167 at 46. But as Laundrylux has explained, Alliance shared quotes with customers without any restrictions; customers could share the quotes with whomever they pleased. See Dkt.157 at 23–24. In this case, ██████ asked Williams to send his quote to Adams at Laundrylux. Ex.54 181:15–183:13. Accordingly, the █████ quote was not "confidential information."

Alliance has accordingly failed to establish Laundrylux's unjustified and wrongful interference with its business relationships.

---

[11] Alliance cannot allege that trade-secret misappropriation is the "improper method" because (1) Alliance has not proven trade-secret misappropriation, and (2) the FUTSA preempts tort claims based on trade-secret misappropriation. *See supra* at 10 –26, 27–28. FUTSA preemption applies even where information does not rise to the level of a trade secret. *Hanaw*, 2014 WL 12606501, at *6.

## CONCLUSION

Laundrylux asks the Court to deny Alliance's motion for summary judgment and grant Laundrylux summary judgment on all claims.

Dated: April 4, 2025

/s/ David. A. Perez
David A. Perez (admitted pro hac vice)
Evelyn Pang (admitted pro hac vice)
David Watnick (admitted pro hac vice)
Shireen Lankarani (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036
Tel:  (212) 262-6900
Fax:  (212) 977-1649


/s/ Beth-Ann E. Krimsky
Beth-Ann E. Krimsky
Florida Bar No. 968412
**GREENSPOON MARDER LLP**
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 527-2427
Fax: (954) 333-4027

*Attorneys for Defendant Autarkic*
*Holdings, Inc. d/b/a Laundrylux*

## WORD COUNT CERTIFICATION

Defendants' Memorandum of Law contains 7,997 words (including the text, headings, footnotes, and quotations, but excluding the table of contents, table of authorities, case caption, signature block, and certificate of service) and therefore complies with the 8,000-word limit in Local Rule 7.1(F).

Dated:  April 4, 2025

*/s/ David A. Perez*

David A. Perez (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036
Tel:  (212) 262-6900
Fax:  (212) 977-1649

*Attorneys for Defendant Autarkic*
*Holdings, Inc. d/b/a Laundrylux*

## CERTIFICATE OF SERVICE

I hereby certify that Laundrylux's motion for summary judgment and accompanying documents were served on all counsel of record via email on March 14, 2025, sent via overnight mail to the Court on April 3, 2025.

Dated:  April 4, 2025

/s/ David A. Perez

David A. Perez (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036
Tel:  (212) 262-6900
Fax:  (212) 977-1649

*Attorneys for Defendant Autarkic*
*Holdings, Inc. d/b/a Laundrylux*