UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| ALLIANCE LAUNDRY SYSTEMS LLC, <br><br> Plaintiff, <br><br> v. <br><br> TRUDY ADAMS, JOHN "CLAY" WILLIAMS and AUTARKIC HOLDINGS, INC. D/B/A LAUNDRYLUX, <br><br> Defendants. | Case No. 23-cv-22130 (MCR) |
| TRUDY ADAMS, JOHN "CLAY" WILLIAMS, <br><br> Defendants/Counterclaim Plaintiffs, <br><br> v. <br><br> ALLIANCE LAUNDRY SYSTEMS LLC, <br><br> Plaintiff/Counterclaim Defendant/ Third Party Defendant, <br><br> and <br><br> MIKE HAND, SAMANTHA BAKER and GREG REESE, <br><br> Third-Party Defendants. | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO AMEND
SCHEDULING ORDER AND SUBSTITUTE EXPERT WITNESS**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................1

LEGAL STANDARD...........................................................................2

ARGUMENT ........................................................................................3

    I.    Alliance's Motion Must Be Denied Because Alliance Was Not
Diligent. .....................................................................................3

        A.    Lanterman's unavailability was long foreseeable, but
Alliance failed to seek relief despite numerous
opportunities...................................................................3

        B.    Alliance's failure to timely seek a different expert betrays
a lack of diligence and fatally undermines Alliance's
Motion. ........................................................................6

    II.    Alliance Cannot Demonstrate Excusable Neglect in Waiting
Months to File Its Motion, Because It Made an Intentional
Strategic Decision to Stick with Mark Lanterman...............................8

    III.    An Expert Substitution Would Throw the Case Schedule into
Disarray and Severely Prejudice Defendants......................................11

        A.    Alliance's proposal would reopen contentious expert
discovery and motions practice.................................................12

        B.    The expense and delay of the elongated proceedings
occasioned by Alliance's proposal would unfairly
prejudice defendants. ...............................................16

    IV.    Alliance Will Not Be Prejudiced by the Denial of Its Motion............19

CONCLUSION ...................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Arevalo v. Coloplast Corp.*,
    2021 WL 2148770 (N.D. Fla. Apr. 5, 2021) ................................................17, 20

*Gastaldi v. Sunvest Resort Cmtys., LC*,
    709 F. Supp. 2d 1284 (S.D. Fla. 2010) ...............................................................16

*Harris Corp. v. Ruckus Wireless, Inc.*,
    2015 WL 3883948 (M.D. Fla. June 24, 2015) ....................................................18

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
    2021 WL 6327368 (N.D. Fla. Aug. 19, 2021).....................................8, 9, 17, 18

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
    2021 WL 9031166 (N.D. Fla. Nov. 15, 2021).........................................3, 8, 19

*Jones v. Barlow*,
    2021 WL 4819616 (M.D. Fla. Oct. 15, 2021) .....................................................19

*Leibel v. NCL (Bahamas) Ltd.*,
    185 F. Supp. 3d 1354 (S.D. Fla. 2016) ................................................3, 6, 7, 18

*Lujan v. National Wildlife Federation*,
    497 U.S. 871 (1990) .............................................................................................9

*McCool v. Bridgestone/Firestone N. Am. Tire, LLC*,
    222 F. App'x 847 (11th Cir. 2007) .....................................................................16

*McCool v. Bridgestone/Firestone North America Tire, LLC*,
    2006 WL 8435316 (S.D. Fla. Feb. 13, 2006) .................................................9, 10

*Mitchell v. Ford Motor Co.*,
    318 F. App'x 821 (11th Cir. 2009) .....................................................................20

*Ocasio v. C.R. Bard, Inc.*,
    2019 WL 12518321 (M.D. Fla. Oct. 21, 2019) ....................................................7

*Payne v. C.R. Bard, Inc.*,
   606 F. App'x 940 (11th Cir. 2015) ...............................................................*passim*

*Rink v. Cheminova, Inc.*,
   400 F.3d 1286 (11th Cir. 2005) ..........................................................................16

*Schwan's Co. v. Cai*,
   No. 20-cv-2157 (D. Minn. Apr. 9, 2025)....................................................18, 19

*Taylor v. Dean*,
   2007 WL 7622152 (M.D. Fla. Jan. 19, 2007) ......................................17, 20, 21

*Timmons v. Purdue Pharma Co.*,
   2006 WL 6866590 (M.D. Fla. Jan. 24, 2006) ...............................................7, 18

*Vision Indus. Grp., Inc. v. ACU Plasmold, Inc.*,
   No. 18-cv-6296 (D.N.J. Apr. 2, 2025)...........................................................12, 13

*Warren v. Delvista Towers Condo. Ass'n*,
   2014 WL 3764126 (S.D. Fla. July 30, 2014) ....................................................20

**RULES**

Federal Rule of Civil Procedure 6 ................................................................................2

Federal Rule of Civil Procedure 16 ..............................................................................2

Federal Rule of Civil Procedure 26 .........................................................................2, 15, 16

Federal Rule of Civil Procedure 37 ..............................................................................2

## INTRODUCTION

Alliance has been fighting tooth-and-nail for months to defend Mark Lanterman, though overwhelming evidence of his perjury, spoliation, and fraud on the court continues to pile up. Yet Alliance now has the chutzpah to claim it is "shocked by [his] unexpected unavailability . . . following the questioning of his credentials." Mot. at 13.

That Mark Lanterman finally withdrew from this matter months after he was removed from his firm and withdrew from other cases can shock nobody. The only unexpected development in this whole affair is that Alliance stuck by Mark Lanterman for so long. But that was Alliance's intentional strategic decision, and the law does not permit what Alliance seeks to do here: amend the case schedule to introduce a new expert witness long after the close of discovery, and only after Alliance's prior strategic gamble failed.

Alliance's request follows months of delay, during which it was foreseeable to all observers that Mark Lanterman very likely would not be able to continue in this matter. Alliance owns this delay, which precludes a showing of good cause or excusable neglect and dooms its Motion. Worse, Alliance's proposal would prejudice Defendants by plunging the case back into contentious expert discovery, long after *Daubert* and summary judgment briefing. The Motion should be denied.

## LEGAL STANDARD

Alliance moves to amend the case schedule in order to disclose a new expert witness long after the deadline for expert disclosures has passed. Mot. at 1–3. "A party seeking the extension of an already-expired scheduling order deadline must show both good cause and excusable neglect." *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 944 (11th Cir. 2015) (citing Fed. R. Civ. P. 6(b)(1) & 16(b)(4)) (affirming district court order denying motion to substitute expert).

"To establish 'good cause' a party must show that the schedule cannot be met despite the diligence of the party seeking the extension." *Id.* (citation omitted). "In determining whether a party has shown 'excusable neglect' . . . , a court must consider all pertinent circumstances, including the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

Alliance suggests its Motion may also be evaluated under Federal Rule of Civil Procedure 37(c)(1), which provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See* Mot. at 8. Although Rules 6 and 16 provide the appropriate standard, *Payne*, 606 F.

App'x at 944, "the practical difference between" the "good cause" and "substantial justification" standards "is negligible," *Leibel v. NCL (Bahamas) Ltd.*, 185 F. Supp. 3d 1354, 1355 (S.D. Fla. 2016) (denying motion to substitute expert), and Alliance's Motion fails under either standard.

## ARGUMENT

### I.    Alliance's Motion Must Be Denied Because Alliance Was Not Diligent.

"A finding of lack of diligence on the part[] of the party seeking modification [of the case schedule] ends the good cause inquiry." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 9031166, at *3 (N.D. Fla. Nov. 15, 2021) (citation omitted). In cases where a party seeks an untimely expert substitution, "when the reason for the substitution was foreseeable and resulted from the part[y's] lack of diligence," good cause is not shown and the substitution is impermissible. *Leibel*, 185 F. Supp. 3d at 1357 (collecting cases). This rule is fatal to Alliance's motion because Alliance eschewed myriad opportunities to seek a new expert.

### A.    Lanterman's unavailability was long foreseeable, but Alliance failed to seek relief despite numerous opportunities.

Alliance claims to be "shocked by the unexpected unavailability of Mark Lanterman." Mot. at 13. It shouldn't be. This is not a case where an expert was suddenly unavailable due to leukemia treatment or the onset of Alzheimer's disease. *See Leibel*, 185 F. Supp. 3d at 1356 (collecting cases permitting late expert substitution). Instead, Mark Lanterman is unavailable due to the same issue that has

dogged him for months (if not years): his fraudulent credentials. As a result of Defendants' investigation and advocacy, Lanterman has been removed from his company, retired from practice, and withdrawn from this case. *See* Mot at 5; Dkt. 222 at 3. This was entirely foreseeable.

According to Alliance, doubts about the veracity of Lanterman's credentials have apparently circulated for years. Dkt. 175 at 32–33 (Response to Motion to Exclude [sealed version]). Had Alliance been diligent, it would have identified those concerns and thoroughly investigated them before choosing to retain Lanterman. Either it did not, or else it just did not care. *See id.*

And Alliance repeatedly failed to exercise diligence during the litigation. In December 2024, Laundrylux served RFPs requesting proof of Lanterman's claimed college degrees. Dkt. 155-5 at 3 (Laundrylux RFPs and Alliance responses). Alliance and Lanterman could not produce any, *see id.*; Dkt. 155 at 14–15, yet Alliance did nothing to respond to the glaring hole in Lanterman's resume.

On February 11, 2025, Laundrylux presented evidence at Lanterman's deposition that there *were no transcripts* reflecting his purported attendance at Upsala College. Dkt. 155 at 15–16. Still Alliance did nothing. To the contrary, it insisted that the questioning at Lanterman's deposition was "unprecedented" and amounted to "repeated unsubstantiated personal attacks on Mr. Lanterman." Dkt. 175 at 14–15. It even relied on Lanterman's opinions extensively in its

summary judgment motion, filed in the early morning of March 15, 2025. *See* Dkt. 167 (sealed version).

On March 14, 2025, Defendants filed their *Daubert* motion, revealing that Lanterman was not listed in the Upsala yearbooks or commencement programs for the years he claimed he graduated—and that in the immediate aftermath of his deposition he had flown across the country, claimed a terminal illness, and absconded with public records of his employment as a police officer, which he never returned. Dkt. 155. *Still*, Alliance did nothing.

Instead, Alliance *opposed* Defendants' *Daubert* motion on March 28, 2025, arguing that Lanterman was "highly qualified" and "reliable," and continuing to assert that that he "earned a Bachelor of Science and Master's degree in computer science from Upsala College." Dkt. 175 at 4, 18. It stuck up for Lanterman though it revealed in the same filing that he had been indefinitely removed from CFS "during the pendency of the investigation" into his credentials. Dkt. 177 at 3.

Then, when Defendants sought leave to file a reply brief in light of further developments regarding Mark Lanterman—like the Hennepin County *Brady* notice and an unfolding FBI investigation—Alliance *opposed that too*, on April 15, 2025. Dkts. 181, 211. Alliance filed that opposition notwithstanding that two weeks earlier, on April 2, Mark Lanterman had announced his retirement and withdrawal from a case in the District of New Jersey, rather than appearing to face questioning—a point

identified in Laundrylux's April 11 summary judgment reply. Dkt. 198 at 14 n.5.

On May 7, 2025, the Court granted Defendants leave to file a reply brief. Dkt. 217. At that point, Alliance finally saw the light and made *ex parte* contact with the Court the next day, requesting permission to file a motion to substitute expert witnesses. Dkt. 223-2 at 5. Alliance provided no notice of this communication or its substitution plan to Defendants for five days, as Defendants continued drafting their reply brief with no awareness that Alliance had already been informed of Mark Lanterman's impending withdrawal. Watnick Decl. ¶¶ 2–3. Shortly after Defendants filed their reply, Dkt. 222, Alliance announced Lanterman's withdrawal and moved to amend the case schedule and designate Sean Lanterman as an expert, *see* Mot.

### B. Alliance's failure to timely seek a different expert betrays a lack of diligence and fatally undermines Alliance's Motion.

After all this, there can be no possible surprise that Mark Lanterman is not available to testify. To say it was "foreseeable" that Lanterman would not be available, *Leibel*, 185 F. Supp. 3d at 1357, would be a radical understatement. Indeed, the very condition Alliance says now prevents Lanterman's appearance— his ongoing "suspension" from CFS—has been a matter of public record since at least March 28 and results directly from the evidence of Lanterman's subterfuge presented in this case. *See* Mot. at 3–7; Dkt. 177 at 2 (March 28 Sean Lanterman Declaration). Alliance had numerous opportunities—before it disclosed Mark Lanterman, before discovery ended, and before the completion of summary

judgment and *Daubert* briefing—to seek a new expert in light of Mark Lanterman's false credentials. It chose not to. It was not diligent.

Similar, albeit less extreme, failures of diligence routinely preclude belated requests to substitute expert witnesses. For instance, in *Leibel*, 185 F. Supp. 3d at 1357, it became apparent during the plaintiff's expert's deposition that his opinion was "not only unreliable, but that his opinion would almost certainly be excluded" due to his unreliability. Yet the plaintiff waited two months to seek to substitute a new expert, and moved only after her initial expert withdrew while a *Daubert* motion was pending. *Id.* The court denied the motion for a lack of diligence. *Id.* at 1358.

Likewise, in *Ocasio v. C.R. Bard, Inc.*, 2019 WL 12518321 (M.D. Fla. Oct. 21, 2019), the plaintiffs sought to substitute their expert witness after the close of discovery, asserting that their initial expert had a conflict of interest. *Id.* at *1. The court denied the motion due to the Plaintiffs lack of diligence because the purported conflict of interest arose months before the substation motion was filed. *Id.* at *4. And in *Timmons v. Purdue Pharma Co.*, 2006 WL 6866590 (M.D. Fla. Jan. 24, 2006), the court denied a substitution motion filed with summary judgment motions pending, four months after the expert deposition at which it became clear "that there was an excellent probability [the expert] would be unavailable to testify at the scheduled trial." *Id.* at *1. Other similar examples abound. *See Leibel*, 185 F. Supp. 3d at 1357 (collecting cases).

Alliance's lack of diligence is ever more profound. It had five or more decisions points where it could have—and *should have*—parted ways with Mark Lanterman because of extreme credibility issues. At the absolute minimum, it could have sought a new expert in March 2025, when it learned of Mark Lanterman's removal from CFS. Yet all along, it chose to stay the course. That Alliance has just now gotten around to seeking a do-over betrays a severe lack of diligence. Its motion must be denied. *See In re 3M Combat Arms*, 2021 WL 9031166, at *3.

## II. Alliance Cannot Demonstrate Excusable Neglect in Waiting Months to File Its Motion, Because It Made an Intentional Strategic Decision to Stick with Mark Lanterman.

Just as Alliance has not demonstrated diligence, *supra* Section I, it also cannot show excusable neglect in waiting until the eleventh hour to bring its motion. This too dooms its effort to amend the case schedule. *Payne*, 606 F. App'x at 944 (the moving party must show excusable neglect, considering the length of delay, the reason for delay, and whether the delay was in the movant's control).

Here, Alliance's months-long delay in seeking a substitute for Mark Lanterman was not the result of oversight. Instead, as its repeated filings indicate, Alliance made an "[i]ntentional strategic decision" to fight for Mark Lanterman rather than seek an alternative, though his credibility and methods were rightfully under siege. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 6327368 (N.D. Fla. Aug. 19, 2021), at *3 (denying motion to reopen expert discovery where

movants' prior strategy backfired); *supra* Section I.

As the United States Supreme Court recognized in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), "a litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk." *Id.* at 897. In keeping with this common-sense principle, the eventual failure of a party's intentional discovery strategy provides no basis for modifying a case schedule and reopening discovery.

*In re 3M Combat Arms*, 2021 WL 6327368, presents a textbook example. There, the defendants sought to reopen discovery in order to depose the author of a memorandum they had previously considered unimportant and inadmissible. *Id.* at *1. This Court denied the motion, holding that the defendants made a strategic choice and did not demonstrate excusable neglect:

> Defendants' reasons for the delay in seeking Vietas' deposition—that they did not believe that the Air Force memorandum would be admissible at trial and that it 'has turned out to be more important that Defendants believed it would be'—are entirely within Defendants' control and do not demonstrate excusable neglect. *Intentional strategic decisions cannot constitute 'excusable neglect.'* Defendants chose to 'roll the dice' on the admissibility of the Air Force memorandum and cannot now 'attempt to get a second bite at the apple and do an end-run around the Court's ruling.'

*Id.* at *3 (emphasis added) (citations omitted).

*McCool v. Bridgestone/Firestone North America Tire, LLC*, 2006 WL 8435316 (S.D. Fla. Feb. 13, 2006), presents another example. There, the plaintiff

sought a trial continuance to retain a new expert after its initial expert was excluded. *Id.* at *3. The court denied the motion: "Plaintiffs' sole reliance on [their lone expert's] opinion, despite being on notice of challenges to the validity and admissibility of that opinion, was done at their own risk and they cannot now be permitted to reopen discovery at this late date." *Id.* (citing *Weisgram v. Marley Co.*, 528 U.S. 440, 456 (2000) (faulting plaintiff who "was on notice every step of the way that [defendant] was challenging his experts, [but] made no attempt to add or substitute other evidence")).

So too here. Alliance has long been aware that Mark Lanterman was at severe risk of exclusion (or self-initiated withdrawal) due to his falsified credentials. Yet instead of seeking to substitute a new expert at the first possible opportunity, it went all in on Mark Lanterman—through expert discovery, *Daubert* briefing, and summary judgment briefing. That gamble failed, and Mark Lanterman withdrew from the matter after he got caught.[1] It is now far too late for Alliance to get a re-do.

Worse, it is not apparent that Alliance has acted in good faith. *See Payne*, 606 F. App'x at 944 ("excusable neglect" inquiry also looks to movant's good faith). Alliance admits it knew Mark Lanterman was withdrawing as early as May 7. Dkt. 223-2 at 4. Though it made *ex parte* contact with the Court the next day to seek an

---

[1] Bizarrely, Alliance kept arguing in favor of Mark Lanterman even after he withdrew. *See* Dtk. 226 (motion for leave to file sur-reply).

-10-

opportunity to substitute in Sean Lanterman, *id.* at 5, it provided no notice to Defendants, who continued needlessly drafting their reply brief arguing for Lanterman's exclusion. Watnick Decl. ¶¶ 2–4. And with the benefit of hindsight, Alliance's introduction of the Sean Lanterman Affidavit on March 28 appears to be the opening gambit in a plan to replace Mark Lanterman with Sean Lanterman. Dkt. 177. Yet Alliance delayed nearly seven more weeks before moving to amend the case schedule to permit that substitution. For these additional reasons, Alliance's Motion fails.

## III. An Expert Substitution Would Throw the Case Schedule into Disarray and Severely Prejudice Defendants.

Alliance takes the remarkable position that Defendants will not be prejudiced by Sean Lanterman's eleventh-hour appearance since he purportedly "participated in the development of and shares the opinions expressed in the [Mark Lanterman Declaration], and [will adopt] those opinions as his own," and because "Alliance is more than willing to agree to permit Defendants to depose Sean Lanterman to explore his role in the investigation and his own credentials." Mot. at 11.

Alliance's claims blink reality. In essence, Alliance seeks to restart expert discovery and derail the entire case schedule when summary judgement and *Daubert* motions are fully briefed and ripe for decision. This would severely prejudice Defendants. *See Payne*, 606 F. App'x at 944 (the Court must consider "the danger

of prejudice to the nonmovant [and] the length of the delay and its potential impact on judicial proceedings").

### A. Alliance's proposal would reopen contentious expert discovery and motions practice.

Were Alliance permitted to introduce a new expert witness this late in the case, it would plunge the parties back into contentious expert discovery and motions practice that was supposed to have ended months ago. Let us count the ways.

#### 1. Depositions and document discovery.

Defendants would indeed take Sean Lanterman's deposition. They would also pursue document discovery from Sean Lanterman and third parties in order to explore his credentials, qualifications, credibility, and participation in preparing any expert report. These extraordinary circumstances would require no less.

*First*, it is highly doubtful that Sean Lanterman could ever objectively or independently review the opinions of his beleaguered father and business partner, Mark Lanterman. *See* Mot. at 6 n.3 (asserting that Sean Lanterman performed an "independent" analysis of this matter); *see also* Watnick Decl. Ex. 1 (asserting Sean Lanterman is or was general counsel of CFS).

*Second*, Mark Lanterman is the founder and proprietor of CFS. *See Vision Indus. Grp., Inc. v. ACU Plasmold, Inc.*, No. 18-cv-6296 (D.N.J. Apr. 2, 2025), Dkt. 309 (Mark Lanterman letter asserting he started CFS and intended to give it to his children). If he retains a financial interest in the company, Sean Lanterman's ability

-12-

to render an unbiased opinion will be further compromised. Potentially, only Mark Lanterman could speak to his continuing financial interests in CFS, though he would assuredly refuse to testify. *See id.* (withdrawing from *Vision Industries* and refusing to appear for questioning).

*Third*, Alliance and Sean Lanterman claim that Sean assisted in the preparation of the Mark Lanterman Declaration, Mot. at 6 n.3, but that sworn statement conspicuously failed to disclose Sean's participation, Dkt. 155-3, casting doubt on the degree and nature of Sean's involvement.

*Fourth*, CFS's work allegedly uses bespoke software Mark Lanterman claims he developed in college. Dkt. 155 at 30–31. Needless to say, Lanterman's lies about his college education calls into question the origins and reliability of his custom software, and any CFS work continuing to rely on it.

*Fifth*, Sean Lanterman has worked with Mark Lanterman for 14 years. *See* Watnick Decl. Ex. 2. During that time, Mark Lanterman committed perjury by swearing under oath to his college degrees (which have now been proven false). *See* Dkt. 155 at 22–26. If Sean Lanterman was aware of this perjurious conduct but failed to correct it in order to protect CFS, his own credibility will fall apart. Of note, Sean Lanterman *has already submitted a sworn statement claiming he reviewed the Mark Lanterman Declaration for factual accuracy*. Dkt. 177 at 2 (March 28 Sean

Lanterman Declaration). Yet the sworn declaration that Sean supposedly verified includes Mark Lanterman's false college attendance claims. *See* Dkt. 155-3 at 4.

*And sixth*, given that CFS itself demonstrably failed to vet Mark Lanterman's purported credentials, Defendants must perform their own exhaustive investigation of Sean Lanterman's claimed credentials and qualifications.

The investigation, discovery, and deposition(s) occasioned by these questions cannot happen overnight. That Alliance is "willing to agree" to the deposition of Sean Lanterman—just one facet of the new expert discovery to which Defendants would be entitled either way—cures nothing.

### 2.    Discovery motions.

To make matters worse, Alliance's conduct to date indicates that Defendants' investigation of Sean Lanterman would not proceed unobstructed. In his deposition, Mark Lanterman refused to answer questions about the software and methods he used in forming his opinions, deeming them propriety information of CFS. Dkt. 155 at 15-17. It stands to reason that CFS's Sean Lanterman would do the same.

Finally, Alliance's counsel dismissed Laundrylux's questioning of Mark Lanterman's education and credentials as "unprecedented" and amounting to "repeated unsubstantiated personal attacks on Mr. Lanterman," Dkt. 175 at 14–15, indicating it may object to similar questioning of Sean.

Any similar efforts by Sean Lanterman or Alliance's counsel to frustrate Defendants' investigation of Sean's background and opinions would result in contested discovery motions, four months or more after discovery closed.

### 3. *Daubert* motion.

If Sean Lanterman intends to adopt Mark Lanterman's report, in whole or in part, Defendants will file another *Daubert* motion, given the methodological failings already apparent from the Mark Lanterman Declaration. *See* Dkt. 155 at 11–20. Another round of *Daubert* briefing when Defendants' first motion was fully briefed and ripe for decision would be prejudicial waste of resources.

Ironically, if Sean Lanterman tries to prevent another *Daubert* motion by describing his methods, it will only worsen the problem—altering the scope of any renewed *Daubert* briefing and introducing untimely new information in violation of Federal Rules of Civil Procedure 26(a)(2). Mark Lanterman already had a chance to describe his methods and satisfy *Daubert*. He refused to do so, Dkt. 155 at 11–19, and has since withdrawn. Alliance should not be permitted to go expert witness shopping and use Sean Lanterman to remedy Mark's failings.

### 4. Summary judgment briefing.

The parties' summary judgment motions are fully briefed and ripe for decision. Alliance made the tactical choice to inject Mark Lanterman's opinions into its summary judgment briefing, though there were serious questions of whether

Lanterman would be available to testify and whether his opinions would survive a *Daubert* challenge. Now, Alliance threatens to throw summary judgment proceedings into disarray by proposing to introduce the opinions of a new expert.

>  **B.    The expense and delay of the elongated proceedings occasioned by Alliance's proposal would unfairly prejudice defendants.**

Courts in the Eleventh Circuit routinely deny belated expert substitution motions because—like here—the disclosure of a new expert would prejudice the nonmoving party by threatening the case schedule and elongating the proceedings:

- *Payne*, 606 F. App'x at 944. The Eleventh Circuit affirmed the district court's decision denying the plaintiffs' motion to disclose a new expert after *Daubert* briefing because the "district court had already extended several of its scheduling deadlines" and "[a]llowing Plaintiffs to identify and to disclose an entirely new expert so late in the proceedings would have likely resulted in substantial delay to the judicial proceedings and in prejudice to Defendants."

- *Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005). The Eleventh Circuit affirmed the district court's decision denying the class representative's motion for a continuance to retain a new expert because the motion "would have required the court, as well as [the defendant], to invest more time and effort to determine the new expert's reliability. Requiring the district court and [defendant] to conduct such an inquiry at this advanced stage of litigation after already conducting an intensive Daubert hearing would represent a substantial inconvenience." *Id.* at 1296.

- *McCool v. Bridgestone/Firestone N. Am. Tire, LLC*, 222 F. App'x 847 (11th Cir. 2007). The Eleventh Circuit affirmed the district court's decision not to permit a post-discovery expert substitution, because the defendants "would have had to invest more time and effort to determine the reliability of this newly designated expert, reviewing a second Rule 26 report, deposing the new expert, and perhaps having to file and defend a second *Daubert* motion." *Id.* at 856.

- *Gastaldi v. Sunvest Resort Cmtys., LC*, 709 F. Supp. 2d 1284 (S.D. Fla. 2010). The court denied the plaintiff's motion for a continuance to permit a new

expert report given "[t]he additional costs and delay associated with repeating discovery," including "reopening (at a minimum) expert discovery" and "additional motion practice on the experts' admissibility." The court held that "[t]he inconvenience to [defendant] weigh[ed] heavily against granting a continuance." *Id.* at 1295.

- *Taylor v. Dean*, 2007 WL 7622152 (M.D. Fla. Jan. 19, 2007). The court granted a motion to strike the untimely disclosure of a substituted expert where the case had been pending for sixteen months, discovery was already closed, and the new expert would necessitate an additional deposition, which "would result in the further delay of th[e] case." *Id.* at *5.

- *In re 3M Combat Arms*, 2021 WL 6327368, at *2–3. The Court denied the defendants' motion to take a new expert deposition after the close of discovery, finding that the deposition "would inject significant delay because it [would] likely necessitate additional discovery [and] Defendants' suggestion otherwise ignore[d] the reality of this litigation."

- *Arevalo v. Coloplast Corp.*, 2021 WL 2148770 (N.D. Fla. Apr. 5, 2021) (subsequent history omitted). The court struck a new expert disclosed after the close of discovery. *Id.* at *1. The court held permitting a deposition of the new expert would "not eliminate the prejudice because re-opening discovery . . . [would] necessarily increase ligation costs" and could lead to delay if "additional Daubert motions [needed] to be filed, and Defendant's motion for summary judgment [needed] to be re-briefed." *Id.* at *5.

For these reasons, Alliance previously *opposed* Laundrylux's October 8, 2024, request to extend the expert disclosure deadline, arguing that "extending the expert deadline for Defendants would entail additional expense and delay of this already protracted litigation" and "would not deter future dilatory behavior or serve to enforce local rules or court-imposed scheduling orders." Dkt. 64 at 24–25; *see also* Dkt. 61 (Laundrylux motion). The Court credited Alliance's argument and denied the motion. Dkt. 74 at 4–5. It should not countenance Alliance's flip-flop now.

Apart from all the forward-looking prejudice from elongated proceedings, permitting Alliance to simply swap in another Lanterman would render pointless all the expert discovery and *Daubert* briefing that already occurred—most of which was occasioned by Alliance's doubling- and tripling-down on Mark Lanterman after it was apparent he would be excluded or unavailable. *See supra* Section I. Alliance rolled the dice on this tactical choice and lost. *In re 3M Combat Arms*, 2021 WL 6327368, at *3. It should bear the cost, not Defendants. *See Leibel*, 185 F. Supp. 3d at 1357–58 (denying plaintiff's motion to substitute an expert witness where the defendant had already deposed the initial expert, filed a motion to exclude him, and moved for summary judgment); *Harris Corp. v. Ruckus Wireless, Inc.*, 2015 WL 3883948, at *7 (M.D. Fla. June 24, 2015) (striking new expert testimony where plaintiff had already "expended significant resources in moving to exclude" prior expert testimony); *Timmons*, 2006 WL 6866590, at *1 (denying motion to substitute expert because "[d]iscovery ha[d] long since ended, and the Court [was] currently considering extensive and complex motions for summary judgment").

Alliance tries to downplay this obvious prejudice by relying on two cases that are simply not analogous. In *Schwan's*, the plaintiff sought a substitute for Mark Lanterman in early April, while discovery in that matter was still open, and while the revelations of Lanterman's misconduct were (at least somewhat) more recent. *Schwan's Co. v. Cai*, No. 20-cv-2157 (D. Minn. Apr. 9, 2025), Dkt. 552 (plaintiffs'

motion to amend). There is no indication that the plaintiff was aware of Lanterman's misconduct until late March, sixteen days before filing its substitution motion. *See Schwan's* Dkts. 553, 554 (memorandum and declaration in support of plaintiffs' motion). Here, discovery has been closed nearly four months, and Alliance inexplicably waited until mid-May to file its motion, though it has known of Lanterman's false credentials for months if not years. And in *Jones v. Barlow*, 2021 WL 4819616 (M.D. Fla. Oct. 15, 2021), the court permitted an expert substitution seemingly without any pending *Daubert* or summary judgment motions, and without the severe credibility and methodological concerns present here. *Id.* at *1.

Because Alliance's motion would needlessly elongate proceedings and prejudice Defendants, it should be denied.

## IV. Alliance Will Not Be Prejudiced by the Denial of Its Motion.

According to Alliance, it would be "severely prejudiced" by the denial of its motion because "expert testimony is expected to form a small but crucial piece of its case." Mot. at 13. Alliance is wrong.

Most fundamentally, potential prejudice to Alliance—the moving party—is not part of the inquiry. *See Payne*, 606 F. App'x at 944; *In re 3M Combat Arms*, 2021 WL 9031166, at *3. As such, courts in this circuit frequently prohibit the late introduction of expert evidence when the sponsoring party has not acted diligently or the opposing party would be prejudiced, though doing so deprives the sponsoring

party of evidence it deems crucial. *See supra* Sections I–II (collecting cases); *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009) (affirming order striking untimely expert evidence and resulting grant of summary judgment).

Indeed, many decisions expressly recognize that this is a necessary consequence of adhering to the case schedule and rules governing expert disclosures. *See, e.g.*, *Arevalo*, 2021 WL 2148770, at *4 ("[E]ven if [the expert's] opinion is critical to Plaintiff's case, that does not mean that it cannot be excluded."); *Taylor*, 2007 WL 7622152, at *5 ("While the Court recognizes that cases should be resolved on their merits, that does not mean that the Court should permit a party to revamp its case by obtaining another expert simply because their disclosed expert turned out not to be an effective witness . . . ."); *Warren v. Delvista Towers Condo. Ass'n*, 2014 WL 3764126, at *1 (S.D. Fla. July 30, 2014) ("Courts routinely strike expert reports or exclude expert testimony which is not timely disclosed, even if the consequence is to preclude a party's entire claim . . . .").

Were it otherwise, every order granting a *Daubert* motion would grant the losing party leave to file a new expert. Obviously, that is not the law. *See Payne*, 606 F. App'x at 944. Yet in essence, that is what Alliance seeks: an opportunity to replace Mark Lanterman after he was forced to withdraw due to the very issues highlighted in Defendants' motion to exclude him. The rules do not permit that either:

> If . . . a party could change experts any time the opposing party successfully neutralized the testimony of an expert under the crucible

of cross examination during a deposition[, s]uch a result would promote 'expert witness shopping,' which is not consistent with the orderly progression of a case and is at odds with the primary purpose in the Federal Rules of Civil Procedure for requiring the service of expert reports and the requirement for setting deadlines for the disclosure of expert reports.

*Taylor*, 2007 WL 7622152, at *4. For this reason, too, Alliance's Motion fails.

## CONCLUSION

For the foregoing reasons, the Court should deny Alliance's motion to amend the case schedule to permit the designation of Sean Lanterman as an expert witness.

Dated: May 21, 2025

/s/ David A. Perez

David A. Perez (admitted pro hac vice)
Evelyn Pang (admitted pro hac vice)
David Watnick (admitted pro hac vice)
Shireen Lankarani (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036
Tel:  (212) 262-6900
Fax:  (212) 977-1649


/s/ Beth-Ann E. Krimsky

Beth-Ann E. Krimsky
Florida Bar No. 968412
**GREENSPOON MARDER LLP**
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 527-2427
Fax: (954) 333-4027


*Attorneys for Defendant Autarkic*
*Holdings, Inc. d/b/a Laundrylux*

/s/ Jura C. Zibas

Jura C. Zibas
Amaris C. Gyebi
**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER LLP**
2063 Main Street, Suite 100
Sarasota, FL 34237
Tel: (941) 866-8561
Fax: (941) 210-5979
Email: jura.zibas@wilsonelser.com
Email: amaris.gyebi@wilsonelser.com


*Attorneys for Defendants Trudy Adams*
*and John "Clay" Williams*

## WORD COUNT CERTIFICATION

The foregoing memorandum, contains 5116 words (including the text, headings, footnotes, and quotations, but excluding the table of contents, table of authorities, case caption, signature block, and certificate of service) and therefore complies with the 8000-word limit established by Local Rule 7.1(F).

Dated:  May 21, 2025

/s/ David A. Perez
David A. Perez (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036
Tel:  (212) 262-6900
Fax:  (212) 977-1649

*Attorneys for Defendant Autarkic*
*Holdings, Inc. d/b/a Laundrylux*

## CERTIFICATE OF SERVICE

I hereby certify that Defendants' Response in Opposition to Motion to Amend Scheduling Order and Substitute Expert Witness was served on all counsel of record via ECF filing on May 21, 2025.

Dated:  May 21, 2025

/s/ David A. Perez
David A. Perez (admitted pro hac vice)
DPerez@perkinscoie.com
**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036
Tel:  (212) 262-6900
Fax:  (212) 977-1649

*Attorneys for Defendant Autarkic Holdings, Inc. d/b/a Laundrylux*